887 F.2d 1528
 UNITED STATES of America, Plaintiff-Appellee,
v.
George NAPPER, in his official capacity as Commissioner of
Public Safety of the City of Atlanta, the City of
Atlanta, Defendants-Appellees,
Luther Alverson, etc. et al., Defendants,
The Atlanta Journal and the Atlanta Constitution, Glenn
McCutchen, individually and as their managing editor,
Georgia Television Company, d/b/a WSB-TV, and David Lippoff,
individually and as its News Director, Intervenors-Appellants.
 No. 88-8747.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 13, 1989.
Rehearing and Rehearing In Banc Denied Dec. 29, 1989.
 
 Terence B. Adamson, Dow, Lohnes & Albertson, James Alexander Demetry, and Peter Crane Canfield, Atlanta, Ga., for intervenors-appellants.
 Sharon Douglas Stokes, Asst. U.S. Atty., Atlanta, Ga., Jerome L. Epstein, U.S. Dept. of Justice, Civ. Div., Leonard Schaitman, and Edward R. Cohen, Appellate Staff, Civ.Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Overtis Hicks Brantley, City of Atlanta Law Dept., Atlanta, Ga., for George Napper and City of Atlanta.
 Appeal from the United States District Court of the Northern District of Georgia.
 Before JOHNSON, Circuit Judge, and RONEY,* Senior Circuit Judge, and YOUNG**, Senior District Judge.
 PER CURIAM:
 
 
 1
 The Atlanta Journal, The Atlanta Constitution, Georgia Television Co., d/b/a WSB-TV, and two individuals, appeal the denial of their motion to dismiss an action initiated by the United States of America to recover certain Federal Bureau of Investigation documents on loan to the City of Atlanta. We view this as a simple case involving the right of the United States to obtain its own documents loaned to a state agency, and affirm the order of Judge Richard C. Freeman, which adequately rejects each contention made by the appellants. United States v. Napper, 694 F.Supp. 897 (N.D.Ga.1988). The appellants are intervenors in this litigation. Although they try to make it so, this case does not involve the First Amendment, the Freedom of Information Act, or whether the appellants have a right to see the documents or obtain the information in them from the Federal Government.
 
 
 2
 The material facts, more fully set forth in the district court's opinion, are undisputed. Between 1979 and 1981, the Federal Bureau of Investigation (FBI) assisted the Atlanta Police Department in its investigation of a spate of murders that came to be known as the "Atlanta Child Murder Cases." During this time, the FBI provided the city's police department with documents relating to the investigation. Most of the documents furnished to the city were marked as follows:
 
 
 3
 This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.
 
 
 4
 In January 1987, several members of the media, including appellant-intervenors, sued the City under the Georgia Open Records Act, O.C.G.A. Sec. 50-18-70, et seq., seeking access to the police department's investigative files concerning the Atlanta Child Murders. As a result of this action, the state trial court released a substantial portion of the loaned files to the media plaintiffs. See Napper v. Georgia Television Co., 257 Ga. 156, 356 S.E.2d 640 (1987). The released files were also made available to other members of the public in the City's public reading room.
 
 
 5
 As a result of a series of articles in The Atlanta Journal and The Atlanta Constitution based on the documents released in the state court action, the FBI learned that copies of approximately 2,300 of its documents had been released to the media and the public, contrary to the condition upon which they had been loaned to the State. The state trial court was considering further the release of additional documents from the police files, thirty-five pages of which were FBI documents, which had been submitted to it in camera.
 
 
 6
 In September 1987, the United States moved to intervene in the state action. Its motion was denied. In November 1987, the FBI formally requested in writing that the Atlanta police return the documents which had been lent to the City during the Atlanta Child Murder investigation. After the City refused, the United States initiated this suit to recover the documents, which are presently in the possession of the City of Atlanta. In March 1988, the district court granted the intervenors-appellants' motion to intervene "for the sole purpose of moving for dismissal of the present action." The district court also granted the media intervenors-appellants thirty days to respond to the United States' motion for summary judgment. The court granted the Government's motion for summary judgment, denied intervenors-appellants' motion to dismiss and ordered defendants to return the disputed documents to the United States within thirty days of the entry of its order. United States v. Napper, 694 F.Supp. at 902.
 
 
 7
 Appellants characterize the district court's decision as an unprecedented grant of authority to the Attorney General to affirmatively deny the public access to federal documents when a state court had ordered the disclosure of such documents pursuant to a state Open Records Act. This position emotionalizes this case, but misses the point of the litigation. This is simply a case in which the Government seeks to retrieve documents which it owns and which the City of Atlanta possesses, has no right to disseminate, and refuses to return to the FBI.
 
 
 8
 The appellants do not dispute that the documents in question belong to the FBI. The district court was correct in determining that a dispute exists over ownership and possession of the documents because the City refused to return the documents the federal Government claims. See Kentucky v. Indiana, 281 U.S. 163, 50 S.Ct. 275, 74 L.Ed. 784 (1930). Contrary to appellants' argument, the United States has authority to bring suit to enforce its contractual and property rights in federal court. See United States v. California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); Cotton v. United States, 52 U.S. (11 How.) 229, 231, 13 L.Ed. 675 (1851).
 
 
 9
 The district court correctly refused to abstain from hearing this case, properly finding that the United States has no other forum in which to claim its interest in the documents, having been denied permission to intervene in the state court action. The United States does not have to rely on the state court defendants to adequately assert its interests.
 
 
 10
 Curiously, the intervenors argue the United States lacked standing to bring this action to retrieve documents which allegedly belong to it. Although the district court allowed intervention, it is difficult to find a base for the appellants' standing in the district court or on appeal. The Government has not sought from intervenors copies of the already released documents, nor does it attempt in this litigation to suppress information already made public. The fact that some documents have already been disclosed does not affect the Government's right to retrieve the documents which are the subject of this litigation.
 
 
 11
 We understand, of course, as a practical matter, that once the documents are returned to the United States, the appellants may have more difficulty in obtaining them or the information in them. But the appellants and this Court cannot find a legal base upon which to posit that practical interest.
 
 
 12
 As did the district court, we make no determination at all as to whether these documents could be made available for disclosure to the public in a proceeding under the Freedom of Information Act or any other theory that a plaintiff might assert against the rightful owner of them.
 
 
 13
 AFFIRMED.
 
 JOHNSON, Circuit Judge, concurring specially:
 
 14
 Although I concur with the majority in its holding that the disputed documents should be returned to the FBI, I write separately for two reasons. First, I am concerned that the majority reached the merits of this appeal unnecessarily. Second, in the event that the majority correctly reached the merits, it failed to address one claim made by the appellants.
 
 A. BACKGROUND
 
 15
 A brief explanation of some pertinent procedural facts may be in order. When appellants filed their original state court action against Commissioner of Public Safety George Napper and the City of Atlanta, the United States was not permitted to intervene. After the state court ordered the City to release the disputed documents to the public, the United States filed suit in federal court against Napper, the City, the state court judge who ordered the documents released, and the state of Georgia. The complaint requested in part that (1) the documents loaned to the City by the FBI be declared United States records under 28 U.S.C.A. Sec. 534,[1] not subject to O.C.G.A. Sec. 50-18-70;[2] and (2) the documents be returned to the government pursuant to 28 U.S.C.A. Sec. 534(b). As the majority notes, although the appellants had possession of the disputed documents at this time, the government never made the appellants a party to this action, never attempted to recover any documents from the appellants at any time, and never attempted to suppress information already made public.
 
 
 16
 On February 18, 1988, the appellants filed a motion to intervene "for the sole purpose of dismissing" the government's claims. The appellants argued that the district court lacked jurisdiction over the government claims. The government moved for summary judgment based on 28 U.S.C.A. Sec. 534(b). On March 17, the district court granted the appellants' motion to intervene.
 
 
 17
 The district court found the appellants' challenges to jurisdiction to be without merit and, on August 31, 1988, denied the appellants' motion for dismissal. In the same order, the district court granted the government's motion for summary judgment under 28 U.S.C.A. Sec. 534. An initial judgment docketed on September 3, 1988, ordered "defendants" Napper, the City, the state judge, and the appellants to return the disputed documents to the government and pay the government its costs. In a second order issued November 10, 1988, and docketed November 14, the district judge explained that the September 3, 1988 order "d[id] not accurately reflect the directions of the court as expressed in its order of August 31, 1988." The court ordered the clerk to amend the judgment to delete the state judge, who had been terminated as a defendant, and to delete the appellants, "against whom the plaintiff sought no relief."[3]
 
 
 18
 The appellants had filed notice of appeal with this Court on September 30, 1988. The appeal was docketed on October 11, 1988. Consequently, when the district court ordered the clerk to amend the clerical error on November 10, the suit had already been under the jurisdiction of this Court for one month, and the district court judge had no authority to amend the judgment without petitioning this Court. Fed.R.Civ.P. 60(a). For this reason, the September 3, 1988 judgment stood against the appellants at the time of this appeal.
 
 B. STANDING
 
 19
 1. Intervention in the District Court Action
 
 
 20
 The district court granted the appellants' application to intervene for the sole purpose of seeking dismissal of the government's suit. The court did not specify whether it granted that application as intervention as of right under Fed.R.Civ.P. 24(a) or as permissive intervention under Fed.R.Civ.P. 24(b).[4] Regardless of whether the intervention was as of right or permissive, however, the appellants had to have standing in order to intervene. Any plaintiff in federal court must demonstrate (1) that he has a personal stake in the outcome of the controversy and (2) that he has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendants and that the injury can be fairly traced to the challenged conduct and is likely to be redressed by a favorable decision." Chiles v. Thornburgh, 865 F.2d 1197, 1204 (11th Cir.1989) (citing Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) and Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). A party seeking to intervene in an action "must demonstrate a 'direct, substantial, legally protectable interest in the proceeding' before that party will be granted intervenor status." Howard v. McLucas, 871 F.2d 1000, 1004 (11th Cir.1989) (citing Athens Lumber Co., Inc. v. Federal Election Commission, 690 F.2d 1364, 1366 (11th Cir.1982)). See also Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1509 (11th Cir.1988) (citing Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1124 (5th Cir.), cert. denied sub nom. Trefina v. U.S., 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), and Hobson v. Hansen, 44 F.R.D. 18, 24 (D.D.C.1968)) (interest necessary for intervention as of right must be a "direct, substantial, legally protectable interest in the proceedings") (emphasis in original).
 
 
 21
 As the majority opinion briefly notes, it is difficult to perceive appellants' direct, substantial, and legally protectable interest in the suit between the City and the United States. At the time of the suit, the appellants already had the majority of the disputed FBI documents in their possession. They had already published several articles based on the documents. Neither of the parties to the lawsuit attempted to retrieve the documents from the appellants or to prevent the appellants from publishing further articles based on the documents they possessed. Further, nothing in the lawsuit prevented the appellants from requesting the documents from the FBI at a later date if necessary.[5] In short, appellants lacked standing to intervene in the district court action. The district court erred when it granted intervenor status.
 
 2. Appeal
 
 22
 Even if the appellants did have standing to intervene, however, this Court should not have reached the merits of appellants' appeal.
 
 
 23
 In order to establish standing to appeal, an intervenor must show that it has "suffered an actual or threatened injury," the injury must be "distinct and palpable," the injury must be "fairly traceable to the challenged action," and "relief ... must be likely to follow from a favorable decision." Boeing v. Comm'r of Patents and Trademarks, 853 F.2d 878, 880 (Fed.Cir.1988) (citing Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607-08, 60 L.Ed.2d 66 (1979); Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2204-05, 45 L.Ed.2d 343 (1975)). Appellants' actual injury in the present case is the September 3, 1988 judgment ordering them to return the documents to the government. Because the government did not seek such relief from the appellants, and because the appellants were not defendants in the action, the judgment against them is unauthorized. An unauthorized judgment is clearly a distinct and palpable injury stemming from the district court action, and is clearly susceptible to relief. The appellants thus had standing to appeal the judgment against them on the ground that it is a nullity.
 
 
 24
 This is not, however, the ground on which the appellants appeal. Rather, the appellants argue that the district court lacked subject matter jurisdiction over the case because (1) there was no case or controversy, (2) the United States had no standing or authority to sue, (3) the district court should have abstained from the decision, and (4) the Rooker-Feldman doctrine precluded district court review. This amounts to an argument that the district court's judgment against Napper and the City, both proper party defendants, was erroneous. Appellants argue that this erroneous judgment prevents them from publishing articles about the Atlanta Child Murders; thus they have suffered an actual injury likely to be redressed on appeal.
 
 
 25
 The appellants lack standing to challenge the district court judgment against Napper and the City for one reason: neither the district court's judgment nor 28 U.S.C.A. Sec. 534 restricts the appellants' ability to publish the disputed material. The district court held in its order of August 31, 1988 that Napper and the City should return the disputed documents to the government; it did not order appellants to do so. Only as a result of a clerical error was judgment entered against the appellants. Section 534 states only that government exchanges of criminal records with state and local government entities are subject to cancellation upon dissemination outside the authorized departments. There is no provision in the statute for penalties against private parties who disclose the disseminated information. The appellants thus suffer no injury as a result of the judgment against Napper and the City; where there is no injury, there is no standing.
 
 
 26
 Because the appellants lacked standing to challenge the judgment against Napper and the City, this Court should not have reached the jurisdictional challenges. Rather, the judgment against the appellants should simply be vacated on the ground that it is unauthorized and a nullity.
 
 C. ROOKER-FELDMAN DOCTRINE
 
 27
 Because the majority chose to address the appellants' challenge to the jurisdiction of the district court, I feel it necessary to address the appellants' fourth challenge, which the majority has not discussed. Appellants argue that because the state court denied the government's motion to intervene in the original action, the Rooker-Feldman doctrine precludes the district court and this Court from deciding this case. The Rooker-Feldman doctrine states that a federal court may not review final state court decisions because such review is reserved to the Supreme Court under 28 U.S.C.A. Sec. 1257. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct. 1303, 1316-17, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). It is clear that this case does not fall within the confines of the Rooker-Feldman doctrine as thus formulated. The government brought a new action in the district court to recover its documents from the City. The government was not a party to the state proceeding; it cannot and does not appeal that decision. Nor does the government appeal the state court's denial of its motion to intervene.
 
 
 28
 Appellants argue, however, that this Court's holding in Wood v. Orange County, 715 F.2d 1543 (11th Cir.1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984) requires us to vacate the district court decision. There is no merit to this argument. Wood began with separate criminal cases in Florida state court. The defendants in the criminal cases were adjudged insolvent and were appointed a public defender. The defendants signed affidavits attesting to their insolvency; these affidavits contained waiver clauses which informed the defendants that a lien could be impressed against their property for services rendered by the public defender. The waivers also stated that the defendants waived notice of any lien proceedings. After the criminal trials, the court entered liens against both defendants without notice. The defendants sued in federal court requesting declaratory and injunctive relief under the due process clause. Wood, 715 F.2d at 1545.
 
 
 29
 The defendants in the federal suit argued that the Rooker-Feldman doctrine precluded the federal action because the defendant/plaintiffs had the opportunity to raise their constitutional claims at several stages in the state proceedings. The Wood court agreed to an extent, holding that Rooker-Feldman "operates where the plaintiff fails to raise his federal claims in state court." Wood, 715 F.2d at 1546. The Wood court further held, however, that this rule applies only "where the plaintiff had a reasonable opportunity to raise his federal claims in the state proceedings." Id. at 1547. If the plaintiff had no such reasonable opportunity, then the issue is not "inextricably intertwined" with the state action and the district court has "original" jurisdiction over it. Id.
 
 
 30
 In the present action, the appellants sued the City in state court to compel production of the disputed documents. The United States attempted to intervene to prevent the dissemination of the documents; it was not permitted to do so. Thus, the government had no opportunity in the state court proceedings to raise the issue involved in the present federal action: whether the United States is entitled to the return of the disputed documents under 28 U.S.C.A. Sec. 534. Because the government did not have a reasonable opportunity to raise this issue in the state proceeding, the Rooker-Feldman doctrine did not preclude the district court's decision.
 
 D. CONCLUSION
 
 31
 Although I feel that the Court need not have reached the merits of this appeal, I concur in the result reached under the analysis used by the majority.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 28 U.S.C.A. Sec. 534 (1982) states in pertinent part:
 (a) The Attorney General shall--
 (1) acquire, collect, classify, and preserve identification, criminal identification, crime, and other records;
 * * *
 (4) exchange such records and information with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions.
 (b) The exchange of records and information authorized by subsection (a)(4) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies.
 
 
 [2]
 At the time of the appellants' original suit, O.C.G.A. Sec. 50-18-70 stated:
 (a) All state, county, and municipal records, except those which by order of a court of this state or by law are prohibited from being open to inspection by the general public, shall be open for a personal inspection of any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen.
 (b) The individual in control of such public record or records shall have a reasonable amount of time to determine whether or not the record or records requested are subject to access under this article. In no event shall this time exceed three business days. (Ga.L.1959, p. 88, Sec. 1; Code 1981, Sec. 50-18-70; Ga.L.1982, p. 1789, Sec. 1).
 
 
 [3]
 The November 10, 1988 order was a ruling on the appellants' motion to stay the judgment pending appeal. The court denied the motion to stay because the amended judgment did not mention the appellants
 
 
 [4]
 Under Rule 24(a), the court must permit a party to intervene if the party:
 claim[s] an interest relating to the property or transaction which is the subject of the action and the appellant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 Under Rule 24(b), a court may permit a party to intervene if the applicant's claim or defense and the main action have a question of law or fact in common. Whether to allow permissive intervention "is committed to the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." United States v. Dallas County Comm'n, 850 F.2d 1433, 1443 (11th Cir.1988).
 
 
 [5]
 As the majority notes, the appellants may encounter difficulty in attempting to obtain the documents from the FBI, but this issue is not ripe for adjudication at this time