**Randall Hank WILLIAMS, Jr., Plaintiff,**

**v.**

**Cathy Louise Deupree ADKINSON, etc., et al., Defendants.**

**Civ. A. No. 91-T-742-N.**

United States District Court, M.D. Alabama, N.D.

March 13, 1992.

---

Robert D. Segall, Montgomery, Ala., Michael Milom, Christian Horsnell, Nashville, Tenn., Barry Friedman, Vanderbilt University School of Law, Nashville, Tenn., for plaintiff.

Robert Weinberg, Montgomery, Ala., for defendants.

Thomas Whitwell Bowron, II, and David Cromwell Johnson, Leila H. Watson, Birmingham, Ala., for Cathy L.D. Adkinson.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

This litigation arises out of the distribution of the estate of Hiriam "Hank" Williams, Sr., who died intestate in 1953. The original state-court proceedings to distribute the estate concluded in 1975, at which time plaintiff Randall "Hank" Williams, Jr., was declared the sole heir to his father's estate. Since that time, however, defendant Cathy Louise Deupree Adkinson has successfully petitioned the Alabama Supreme Court to reopen and reap-

portion the Williams estate on the grounds that she is the natural child of Williams, Sr., and is entitled to inherit from him.[1] The Alabama Supreme Court has remanded that case to the Circuit Court of Montgomery County, where it is currently pending.[2] Williams, Jr. filed the present action for injunctive and declaratory relief requesting that this court nullify the effect of the Alabama Supreme Court decision, reaffirm the validity of the 1975 judgment which declared him to be the sole heir, and enjoin any state court proceedings which would distribute the estate otherwise than in accordance with the 1975 judgment. Williams, Jr. has sued Adkinson and Judge Eugene W. Reese, the state-court judge presiding over the pending state-court proceedings. He charges that the defendants, in seeking to enforce the judgment of the Alabama Supreme Court, have violated his rights to substantive and procedural due process and equal protection of the laws, and that the state court's decision has taken his property without just compensation, all in violation of the fifth and fourteenth amendments to the United States Constitution as enforced through 42 U.S.C.A. § 1983. He has invoked the jurisdiction of the court pursuant to 28 U.S.C.A. §§ 1331, 1343.

This cause is now before the court on motions to dismiss filed by Adkinson and Judge Reese. For the reasons that follow, the court concludes that this cause should be dismissed, albeit without prejudice to the continued pursuit of Williams, Jr.'s claims in state court.

## I. Background

When Williams, Sr. died in 1953, he left a single living heir: his son, Williams, Jr. In the month before his death, however, Williams, Sr. entered into an agreement with Bobbie Jett regarding the care of a child that Jett was then carrying. Under the terms of the agreement, Jett surren-

1. Adkinson also goes by the name Catherine Yvonne Stone.

2. Williams, Jr., who had been made a party to that suit on remand, sought to remove that case to federal court. Finding no federal question to justify jurisdiction, this court has recently granted Adkinson's motion to remand that action back to state court. *See Stone v. Williams,* 792 F.Supp. 749 (M.D.Ala.1992).

dered all parental rights in the child and Williams, Sr., without specifically claiming the child as his own, undertook to raise and support it. This child was born five days after Williams, Sr.'s death. The child, now an adult, is Adkinson. After her birth, pursuant to the agreement between Williams, Sr. and Adkinson's mother, Adkinson was adopted by Lillian Stone, the mother of Williams, Sr. At Mrs. Stone's death two years later, however, Adkinson was placed in foster care and eventually adopted out of the Williams family. Adkinson's adoptive parents did not tell Adkinson of her connection to Williams, Sr.

In 1967, the Williams family petitioned the Montgomery Circuit Court for final settlement of the estate of Williams, Sr. At this time, the trustees of the estate advised the court of Adkinson's potential claim on the estate, in light of the agreement between Williams, Sr. and Adkinson's mother. Because Adkinson's adoptive parents chose not to participate in the distribution, the court appointed a guardian to represent Adkinson's interests. As a result of proceedings held in 1967 and 1968, the court ruled that Williams, Jr. was the sole heir to the estate and that, according to state law, Adkinson, as an illegitimate child who had been twice adopted, was not entitled to inherit from Williams, Sr., even if she were found to be his natural child.[3] The guardian ad litem sought to appeal this ruling on behalf of Adkinson but the trial court denied permission to appeal. In 1975, the Williams estate was closed.

Sometime after 1974, when she reached the age of majority, Adkinson discovered her connection to the Williams family and the possibility that she might be the natural child of Williams, Sr. In 1985, Adkinson wrote Williams, Jr. demanding a share in the renewal copyrights of her father's songs. Anticipating litigation over the renewal copyrights, Williams, Jr. filed the state-court suit that marks the beginning of the current round of litigation over the estate of Williams, Sr.

## II. Procedural History

In the suit filed in the Circuit Court of Montgomery County in 1985, Williams, Jr. and the trustees for the shareholders of the original and renewal copyrights sought a declaration that Adkinson had no right to share in the estate or copyrights of Williams, Sr.[4] In response to Williams, Jr.'s suit, Adkinson filed a counterclaim seeking to have the prior court orders regarding the estate vacated and her right to inherit recognized. In addition, Adkinson filed a third-party complaint against the estate administrators and sureties seeking to have the estate reopened on grounds of fraud.[5] Adkinson also filed suit against Williams, Jr. and the shareholders in federal district court in New York over the specific issue of her right to share in the copyright renewals.[6]

The state trial court entered summary judgment in Williams, Jr.'s favor on all issues contained in his original complaint and in Adkinson's counterclaim, with the exception of the issue of Adkinson's paternity, which it reserved for trial. The trial court held that even if Adkinson were the natural child of Williams, Sr., she would have been ineligible to inherit because of legal restrictions on the inheritance rights of illegitimate and adopted children. After

---

3. The court did not find it necessary to reach the issue of Adkinson's paternity at that time.

4. In his complaint, Williams, Jr. sought the following relief: that the court uphold the prior orders and enjoin Adkinson from making further claims on the estate or copyrights of Williams, Sr.; that, if the court modified the prior orders, the court proceed to adjudicate the rights of the parties with respect to Williams, Sr.'s estate and the copyright and renewal copyright interests in his compositions; and such further relief as the court deemed appropriate. *Stone v. Gulf American Fire & Cas. Co.,* 554 So.2d 346, 348 n. 2 (Ala.1989).

5. In her third-party claim against the administrators of the estate and the sureties, Adkinson made three requests: that the estate be reopened and that she receive her share in it; that she be awarded punitive damages against the administrators; and that the sureties compensate her for damages not recovered against the other defendants. *Stone v. Gulf American,* 554 So.2d at 348–49.

6. The federal district court resolved this suit in Williams, Jr.'s favor. *Stone v. Williams,* 766 F.Supp. 158 (S.D.N.Y.1991).

the trial, the court found Adkinson to be the natural daughter of Williams, Sr. Thus as a result of this judgment, Williams, Jr. was declared the sole heir. Neither Adkinson nor Williams, Jr. sought review of the judgment entered by the trial court.

The trial court also rejected Adkinson's charge of fraud and entered summary judgment in favor of all third-party defendants on all of Adkinson's claims. The court reasoned that even if the trustees had failed to make full disclosure to the court of the circumstances surrounding Adkinson's birth this would not constitute fraud since Adkinson was not an heir to the Williams estate in 1953 and could not have been established as such under then-existing law. The only legal duty imposed on the trustees was to act in good faith and in accordance with applicable Alabama law as it existed at that time.

Adkinson appealed the decision rendered in her third-party claim. On appeal, the Alabama Supreme Court reversed the trial court's summary judgment. *Stone v. Gulf American Fire & Casualty Ins. Co.*, 554 So.2d 346 (Ala.1989). The court found that the administrators had knowingly concealed material facts about Adkinson's identity from the court administering the Williams estate. More important, however, was the court's conclusion that the court administering the estate had committed an error of law in denying Adkinson's guardian ad litem the opportunity to appeal.[7] In light of this "serious" error, the Alabama Supreme Court decided to revisit the judgments rendered against Adkinson in 1967 and 1968 and to "modify their operation" with respect to Adkinson. The court concluded that any res judicata effect of those decisions had been vitiated by the serious error of law. The court further concluded that, in light of the unusual circumstances surrounding this case, Adkinson's delay in asserting her claim was not unreasonable and would not bar recovery.

The root of the current controversy lies in the Alabama Supreme Court's next step.

After concluding, for the reasons identified above, that Adkinson was entitled to have the estate reopened and her claims reconsidered, the court decided to address the substance of Adkinson's legal claims rather than simply reversing the trial court's grant of summary judgment and remanding for further proceedings. Moreover, the court decided to address not just those "primary issues" raised by Adkinson in her appeal but also several additional questions which it raised of its own accord. In choosing this course, the court acknowledged that no appeal had been taken from the other judgments, which declared Williams, Jr. the sole heir, but reasoned that, since "the entire record" was before it, resolution of all of Adkinson's claims at once would further the interests of judicial economy. *Stone v. Gulf American*, 554 So.2d at 363.

First, with regard to Adkinson's right to inherit, the court decided that all previous rulings on this subject had been tainted by the administrators' fraud on the court in 1967 and that, therefore, none of these carried res judicata or collateral estoppel effect. Considering Adkinson's claims anew, the court found that the Alabama law which previous courts had applied in denying her claims was unconstitutional under *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Although *Trimble* was not decided until two years after the Williams estate was closed, and ten years after the state court had first rejected Adkinson's claims, the Alabama Supreme Court held that *Trimble* should be applied retroactively to the determination of Adkinson's rights. Thus, applying constitutional law as it stood at the time of this appeal in 1989, the court found that Adkinson was the natural child of Williams, Sr. and was entitled to share in the Williams estate.

Having settled the scope of Adkinson's rights, the Alabama Supreme Court addressed the equally complex issue of relief.

---

7. While recognizing that the law as it existed in Alabama at that time "was unfavorable to illegitimate children with regard to intestate succession from their fathers," the Alabama Supreme Court suggested that, had the guardian ad litem appealed, the court might have decided to re-write the law and allow Adkinson's claim. *Stone v. Gulf American*, 554 So.2d at 360.

Invoking the "peculiar" factual circumstances and the "unique character" of the case, the court sought to devise a form of relief that would balance the interest in the finality of judgments against the "pleas for relief" of an innocent party who had been deprived of her rights through fraud and error. As a compromise, the court did not grant Adkinson a full half-share in the estate; instead, it held that she was entitled to one-half of the proceeds from the estate from the date in 1985 on which she first asserted her claim. In so doing, the court effectively overturned the favorable judgment Williams, Jr. had obtained in the trial court and displaced Williams, Jr. from his position as sole heir to the Williams estate.

Williams, Jr., who had not been a party to the appeal, unsuccessfully sought leave to appear before the Alabama Supreme Court for the purpose of seeking to vacate or modify the judgment. After the court denied his motion, Williams, Jr. filed a petition for a writ of certiorari to the United States Supreme Court raising both procedural and substantive legal claims but this, too, was denied. *Williams v. Stone*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). The Alabama Supreme court remanded *Stone v. Gulf American* back to the trial court for further proceedings consistent with its opinion.

On remand, the trial court, on its own motion, added Williams, Jr. as a necessary defendant. At Williams, Jr.'s request, the court ordered Adkinson to file a complaint against Williams, Jr. that would give this new defendant notice of the claims against him. Adkinson filed an "Amended Complaint" in July 1991 and, the following month, Williams, Jr. responded with a counterclaim. The counterclaim filed in that case raises essentially the same issues raised in the complaint submitted to this court.

As stated, Williams, Jr. charges that Adkinson and the state court judge, in seeking to enforce the judgment of the Alabama Supreme Court, have violated his rights to substantive and procedural due process and equal protection of the laws, and that the state court's decision has taken his property without just compensation, all in violation of the fifth and fourteenth amendments. Williams, Jr. has stated these various claims in terms of six separate counts. Count I charges that the Alabama Supreme Court violated his rights to procedural due process under the fourteenth amendment by denying him notice and an opportunity to be heard regarding the question of Adkinson's right to a share of the Williams estate. Williams, Jr. contends that he had a property interest in the estate and that the Alabama Supreme Court deprived him of a portion of that property in a proceeding to which he was not a party.

Counts II and III identify specific errors allegedly made by the Supreme Court in the application of "settled Alabama law." Williams, Jr. contends that these errors violate his substantive due-process rights. In Count II, Williams, Jr. asserts that the court's decision violated applicable law in that it effectively held Williams, Jr., not the defendant administrators, liable for the amount of the judgment. In Count III, Williams, Jr. asserts that, under settled Alabama law, Adkinson was not entitled to any relief, regardless of whether this ran against Williams, Jr. or the administrators. He claims the court's decision awarding Adkinson a share in the estate relies upon a misinterpretation of the doctrines of laches and res judicata.

In Count IV, Williams, Jr. claims that the Alabama Supreme Court misapplied federal common law by applying decisions of the United States Supreme Court retroactively to cases settled at the time those decisions issued, and contends that this error violated his substantive due-process rights. In Count V, he charges that the decision of the Alabama Supreme Court "took" his property without just compensation in violation of the fifth amendment. Finally, in Count VI, he alleges that the court's inconsistent application of the doctrine of res judicata denied him the equal protection of the laws.

The combination of declaratory and injunctive relief Williams, Jr. proposes as a remedy to these various injuries would ef-

fectively nullify the decision of the Alabama Supreme Court in *Stone v. Gulf American* and restore Williams, Jr. to his position as sole heir. Toward this end, he would have this court declare the following: that he is not bound by that decision; that the decision violated his various due-process rights and perpetrated a taking of his property; and that the Alabama Supreme Court erred in its application of relevant federal law. Williams, Jr. also asks this court to declare that he is not bound by the state trial court's determination of Adkinson's paternity, and that all decisions issued prior to the Alabama Supreme Court's 1989 decision in *Stone v. Gulf American* are res judicata with respect to his rights in the estate. In addition, he seeks to enjoin any further proceedings in state court to which he is an involuntary party and any proceedings that would dispose of the estate other than in accord with the 1975 "final" settlement. If further proceedings are to be had in state court, Williams, Jr. requests an injunction requiring state courts to permit him to participate in all issues affecting his interest. Finally, he also requests damages in the amount of the costs and attorney's fees spent on all litigation subsequent to the

1989 decision in *Stone v. Gulf American,* and costs and fees for this action.

## III. Discussion

Adkinson and Judge Reese contend that this court lacks jurisdiction over Williams, Jr.'s lawsuit and that his claims, if he has any, properly belong in state court. Having reviewed both the claims and the relief requested, the court agrees with the defendants that Williams, Jr.'s claims must be dismissed for lack of jurisdiction. While Adkinson and Judge Reese suggest numerous alternative legal bases for this conclusion, including the eleventh amendment, *Colorado River* abstention,[8] the "probate exception" to federal jurisdiction,[9] and the anti-injunction act,[10] the court finds that the *Rooker–Feldman* and *Younger* abstention doctrines are most appropriate to this case.

### 1. *Rooker–Feldman*

Adkinson and Judge Reese contend that Williams, Jr.'s federal lawsuit, although couched in terms of a civil rights complaint, is essentially an effort to appeal the adverse determination of the state court. Such an appeal would be barred by the *Rooker–Feldman* doctrine, which prohibits a federal district court from reviewing a final judgment of a state court for

---

**8.** *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). *Colorado River* permits a federal court to abstain from hearing a federal case which would duplicate parallel litigation pending in state courts. However, the Eleventh Circuit has held *Colorado River* abstention inapplicable to actions brought under 42 U.S.C.A. § 1983. *Alacare, Inc.–North v. Baggiano,* 785 F.2d 963, 969 (11th Cir.) ("*Colorado River Water District* has been rejected as a basis for abstention under Section 1983 in this Circuit"), *cert. denied,* 479 U.S. 829, 107 S.Ct. 111, 93 L.Ed.2d 59 (1986); *Forehand v. First Alabama Bank,* 727 F.2d 1033, 1035–36 (11th Cir. 1984).

**9.** Defendants contend that this court lacks jurisdiction over an action, such as Williams, Jr.'s, that would interfere with probate proceedings pending in a state court or with property controlled by a state probate court. *See, e.g., Howard v. Brown,* 738 F.Supp. 508, 510 (S.D.Ga. 1988). However, the cases upon which the de-

fendants rely for this proposition limit the application of the "probate exception" to suits brought under the federal court's diversity jurisdiction. *See id.; see also Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Glickstein v. Sun Bank/Miami, N.A.,* 922 F.2d 666 (11th Cir.1991); *Michigan Tech. Fund v. Century Nat'l Bank,* 680 F.2d 736 (11th Cir. 1982); *Ganoe v. Lummis,* 662 F.Supp. 718 (S.D.N.Y.1987), *aff'd mem.,* 841 F.2d 1116 (2d Cir.), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 886 (1988). Where, as here, the plaintiff does not predicate federal jurisdiction on diversity among the parties, the probate exception is not relevant.

**10.** 28 U.S.C.A. § 2283, the anti-injunction statute, prohibits federal courts from enjoining state court proceedings, but the statute excepts from its prohibition injunctions which are "expressly authorized" by another act of Congress. The United States Supreme Court has held that actions, such as this one, that are brought under § 1983 are within this "expressly authorized" exception to the ban on federal injunctions. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

alleged errors of federal law. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In *Rooker*, the United States Supreme Court held that only it, and not lower federal courts, had the authority to review decisions rendered by the highest court of a state. The Court explained that,

> "Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the [state-court] judgment for errors.... To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."

263 U.S. at 416, 44 S.Ct. at 150 (citations omitted). In *Feldman*, the Court clarified that district courts lack jurisdiction over challenges to state-court judgments in particular cases, even if those challenges allege that the state court's action violated federal law, where the federal law claims are "inextricably intertwined" with the state court decision. 460 U.S. at 486–87, 103 S.Ct. at 1317. The Court reasoned that review of these claims would necessarily amount to review of the state-court decision. The Eleventh Circuit has therefore held that, under the *Rooker–Feldman* doctrine, federal district courts may not decide federal issues that have been decided by the state court or those that are "inextricably intertwined" with the state court's judgment. *Wood v. Orange County*, 715 F.2d 1543 (11th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984).

*Rooker–Feldman* bars this court from exercising jurisdiction over Williams, Jr.'s claims. In this case, Williams, Jr. asks the court to review the decision of the Alabama Supreme Court for errors of federal and state law. First, with respect to Williams, Jr.'s due-process claim, he seeks a declaration from this court that the state court's distribution of the Williams estate in a proceeding to which he was not a party violated his due-process rights. Williams, Jr. has already presented this same question to the Alabama Supreme Court in his motion for leave to appear. That court considered Williams, Jr.'s arguments and, as he concedes, "flatly rejected" his claim. Plaintiff's Brief at 40. Therefore, for this court now "to reverse or modify [this] judgment ... would be an exercise of appellate jurisdiction." *Rooker*, 263 U.S. at 416, 44 S.Ct. at 150. In order to find in Williams, Jr.'s favor, this court would necessarily have to find that the state court had erred in denying Williams, Jr. leave to appear. Clearly, *Rooker–Feldman* prohibits a federal district court from exercising jurisdiction over this claim.[11]

■ The court concludes that *Rooker–Feldman* similarly bars the exercise of federal district court jurisdiction over Williams, Jr.'s remaining claims. Although these precise claims may not have been argued before the Alabama Supreme Court, each of the federal claims—the substantive due process, takings, and equal protection violations—is "inextricably intertwined" with that court's decision. As Justice Marshall has explained, "a federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state

---

**11.** Williams relies on the decision in *Robinson v. Ariyoshi*, 441 F.Supp. 559 (D.Haw.1977), *aff'd in part, vac'd in part*, 753 F.2d 1468 (9th Cir. 1985), *vac'd on other grounds*, 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986), as support for the proposition that the Alabama Supreme Court's denial of his motion for leave to appear should not bar litigation of his due process claim in federal court. The facts of that case differ significantly from this situation. Of central importance in *Robinson* was the fact that the claimants, who had sought leave to appear before the state supreme court, "ha[d] been turned away from the state tribunal without so

much as an explanation." *Id.*, 753 F.2d at 1473 n. 3. It was because of the state court's summary rejection of the motion for leave to appear that the federal court concluded that the plaintiff's due-process claims "were not and could not have been litigated" in the state proceedings. *Id.* at 1472.

Furthermore, this circuit criticized the *Robinson* district court's initial decision to exercise jurisdiction. *Reynolds v. Georgia*, 640 F.2d 702, 707 n. 2 (5th Cir. Unit B) (declining to follow *Robinson* district court decision), *cert. denied*, 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 165 (1981).

court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). Where, as here, "federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, any other than a prohibited appeal of the state-court judgment." *Id.* Williams, Jr. essentially asks this court to find that the Alabama Supreme Court erred in reopening the estate without Williams, Jr.'s participation and erred in its application of the relevant state and federal law. This interpretation of Williams, Jr.'s claims is supported by the nature of the relief sought in this case: he specifically asks this court to declare that the decision of the Alabama Supreme Court was in error and to nullify the effect of that decision. *See Centifanti v. Nix*, 865 F.2d 1422, 1429 & n. 8 (3rd Cir.1989) (nature of relief requested confirms lack of subject-matter jurisdiction). Examination of each of the remaining claims demonstrates that each one seeks review of issues inextricably intertwined with the state-court judgment.

■ Williams, Jr.'s two substantive due-process claims are predicated on his assertion that the Alabama Supreme Court misapplied settled Alabama and federal law. On the basis of these errors, he seeks vacation of the state-court judgment. In Count II, Williams contends that the court erred, and violated "settled Alabama law," by holding that the relief it provided would run against Williams, Jr. rather than against the administrators who had been found guilty of fraud.[12] In essence, Williams, Jr.'s objection is to the procedural unfairness of the court's decision to re-open and redistribute the Williams estate, thereby impinging on his rights as the sole heir, in a proceeding to which he was not a party. However, as discussed above, the Alabama Supreme Court has addressed Williams, Jr.'s procedural due process claim and has concluded that no due-process violation occurred. Williams, Jr.

cannot avoid the *Rooker–Feldman* bar by recasting his procedural due-process complaint in the language of substantive due process.

Count III enumerates additional errors allegedly made by the Alabama Supreme Court in applying the law and interpreting the facts of Adkinson's case. Williams, Jr. charges that that court erred in failing to find Adkinson's claim time-barred, erred in its retroactive application of principles of state law, and erred again in its "selective and arbitrary" application of the doctrine of res judicata. Williams, Jr. further asserts that the Alabama Supreme Court "seriously distorted" the facts and failed to credit facts that would have supported his position. Thus he asks nothing less than that this court review both the factual findings and legal conclusions of the Alabama Supreme Court. There is no question but that these issues are "inextricably intertwined" with the state court judgment; nor should there be any question but that *Rooker–Feldman* prevents this court from reviewing the state court judgment for error. Williams, Jr.'s attempt to present these various errors as a substantive due-process violation does not change the essential nature of his claims.

In Count IV, Williams, Jr. claims that the state court violated his substantive due-process rights when it misapplied federal common law on retroactivity. Again, this claim is "inextricably intertwined" with the state-court judgment: to hold in Williams, Jr.'s favor, this court would have to find that the state supreme court judgment was in error. This the district court cannot do.

■ Count V charges that the decision of the Alabama Supreme Court violated Williams, Jr.'s constitutional rights by "taking" his private property without just compensation. Again, to award relief to Williams, Jr. on this count would require this court to review the Alabama Supreme Court decision for constitutional error. While this circuit has recognized that a judgment of a state court may be so con-

---

**12.** To the extent that Williams, Jr. seeks to have this court require state officers to act in accordance with state law, his claim would be barred

by the eleventh amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

trary to settled principles of law as to violate due process, *see, e.g., Williams v. Tooke*, 108 F.2d 758, 759 (5th Cir.), *cert. denied*, 311 U.S. 655, 61 S.Ct. 8, 85 L.Ed. 419 (1940), a federal court is nonetheless barred from hearing such a claim where the purpose of the federal suit is to seek review and reversal of the state court decision.[13] *Reynolds v. Georgia*, 640 F.2d 702, 706–07 (5th Cir. Unit B), *cert. denied*, 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 165 (1981).[14] This court cannot exercise jurisdiction over this claim.[15]

■■■ In Count VI, Williams, Jr. contends that the Alabama Supreme Court's

decision to give res judicata effect to the portion of the 1985 judgment which resolved Adkinson's paternity, while denying res judicata effect to that court's declaration that Williams, Jr. was the sole heir, violates his right to equal protection of the laws. Again, Williams, Jr.'s claim, although posed as a question of equal protection, is simply a restatement of his objections to the state court's resolution of the substantive legal issues before it. Applying both legal and equitable principles, that court found that Adkinson was entitled to inherit despite any previous decisions declaring Williams, Jr. the sole heir to the

---

13. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Cf. Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982) (adopting as binding precedent all of the post-September 30, 1981 decisions of Unit B of the former Fifth Circuit).

14. In *Williams v. Tooke*, the plaintiff filed a federal lawsuit seeking nullification of a state court judgment in a foreclosure action. That complaint charged the state courts with having "deliberately, arbitrarily, capriciously and intentionally discriminated against plaintiffs and refused to award them relief, which under the settled laws of the state they were entitled to; and further, the state ... acting by its said judicial departments, in effect, took plaintiffs' said property and gave it to the defendants without consideration, and without due process of law." 108 F.2d at 759. The Court of Appeals dismissed the claim for lack of subject matter jurisdiction since "the purpose of the suit is clearly to seek a review of the decision of the [state] courts and the reversal of those decisions for error." *Id.* (quoted with approval in *Reynolds v. Georgia*, 640 F.2d at 706–07).

15. Although this court dismisses Williams, Jr.'s takings claim for jurisdictional reasons, the court also notes that it has serious doubts whether this count states a claim. The United States Supreme Court has not directly addressed whether courts, as opposed to legislative bodies, can ever "take" property in violation of the fifth amendment. *See Corporation of the Presiding Bishop v. Hodel*, 830 F.2d 374, 381 (D.C.Cir. 1987) (question presents interesting and unsettled issue of law), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). In dicta, the Court has indicated that a state court, like other state entities, may effect an unconstitutional taking if the court's decision causes an "unpredictable," "unforeseeable" or "sudden"

change in the law that results in the transfer of private property to the state without due process of law, *see Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, 331, 94 S.Ct. 517, 528, 38 L.Ed.2d 526 (1973), *overruled on other grounds, Oregon v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977); *Hughes v. Washington*, 389 U.S. 290, 297–98, 88 S.Ct. 438, 442–43, 19 L.Ed.2d 530 (1967) (Stewart, J., concurring), or if the state court decision rests upon a "gross" or "arbitrary" error. *Roberts v. City of New York*, 295 U.S. 264, 277, 55 S.Ct. 689, 691, 79 L.Ed. 1429 (1935).

In this case, however, there has been no taking for public use. Rather, Williams, Jr. claims that the state court has deprived him of his property and awarded it to Adkinson, another private party, without compensating him for his loss. Williams, Jr. acknowledges that the purpose for which the state court "took" his property, if the property was indeed "taken," was "entirely private in spirit and effect." Complaint at 39. Williams, Jr. asserts that the United States Supreme Court has recognized a takings violation when a legislative body, not a court, transfers property from one private party to another without the justification of any public purpose. *See, e.g., Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984); *Thompson v. Consolidated Gas Corp.*, 300 U.S. 55, 80, 57 S.Ct. 364, 376, 81 L.Ed. 510 (1937). Yet Williams, Jr. has not identified any precedent that would support extension of this doctrine to permit dissatisfied litigants to state a claim under the takings clause whenever a state-court decision resulted in the loss of their property. "[U]nlike a legislature, a court allocates property between individual private parties almost every time it acts in a civil case;" frequently, resolution of the dispute requires reevaluation of existing precedent. *Corporation of the Presiding Bishop v. Hodel*, 637 F.Supp. 1398, 1407 (D.D.C.1986), *aff'd*, 830 F.2d 374, 381 (D.C.Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). Thus even were this claim properly before this court, the court would reject it.

estate. First, as a matter of law, the Alabama Supreme Court explicitly held that "the doctrine of res judicata does not apply in this situation, because that doctrine prohibits the *relitigation* of all matters that were or could have been litigated in a *prior* action. Here, the complaint of Williams, Jr., and Stone's counterclaim and third-party complaint were litigated together."
*Stone v. Gulf American*, 554 So.2d at 372 (internal citation omitted). Considering also the demands of justice, that court further concluded that application of the principles of res judicata and collateral estoppel in this case "would be most inequitable, ... would violate the spirit of [the Alabama rules of procedure], and would elevate form over substance," since the 1985 trial court judgment in Williams, Jr.'s favor "was premised upon an erroneous determination by the trial court that even if [Adkinson] was a natural child of Williams, Sr., she was not an 'heir.' " *Id.* at 374–75 & n. 4. Williams, Jr. evidently believes that the Alabama Supreme Court erred in its conclusion that res judicata should not apply in this case. Under *Rooker–Feldman*, however, this court is not the proper forum for an appeal of the decision of the Alabama Supreme Court.[16]

Williams, Jr. relies on an exception to the *Rooker–Feldman* doctrine recognized in *Wood v. Orange County*, 715 F.2d 1543 (11th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). In *Wood*, the Eleventh Circuit concluded that *Rooker–Feldman* would not bar the exercise of federal jurisdiction over a plaintiff's federal claims where the plaintiff had not been afforded a reasonable opportunity to raise those claims in the state proceedings. *Id.* at 1547. In *Wood*, the plaintiffs claimed that certain liens entered against them were unconstitutional because they were neither notified of the lien proceedings nor able to participate in them. The Eleventh Circuit reasoned that where a plaintiff did not have a reasonable opportunity to raise his federal claims, he could not be said to have "failed" to raise the issues, nor could these issues properly be regarded as "inextricably intertwined" with the state case. *Id.* at 1546. "Because the issue [which the claimant had no opportunity to raise] did not figure, and could not reasonably have figured, in the state court's decision," the appellate court continued, "the district court has 'original' jurisdiction over the issue." *Id.* at 1547. Thus, a federal district court's exercise of jurisdiction over such claims would not usurp the exclusive authority of the United States Supreme Court to review state court decisions for errors of federal law. *Id.* See also *Liedel v. Juvenile Court of Madison County, Ala.*, 891 F.2d 1542, 1545 n. 4 (11th Cir. 1990); *United States v. Napper*, 887 F.2d 1528, 1534 (11th Cir.1989) (Johnson, J., concurring) (reaffirming exception recognized in *Wood*). Finally, the court suggested that interpreting *Rooker* to preclude a federal district court from considering an issue that the plaintiff had no reasonable opportunity to raise in state court "might pose due process problems," since such a "harsh rule" might deprive the plaintiff of any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims. *Id.*

The court finds that Williams, Jr.'s claims do not fall within this exception to *Rooker–Feldman*. First, although Williams, Jr. himself did not participate in the appeal before the Alabama Supreme Court, that court found that Williams, Jr.'s position "was adequately presented by other parties on this appeal." [17] *Stone v. Gulf American*, 554 So.2d at 374. Second, because the court found that other parties

---

16. Even if this court were to consider Williams, Jr.'s equal-protection claim on its merits, the court would dismiss this claim. The decision of the Alabama Supreme Court in *Stone v. Gulf American* provides numerous "rational reasons," including the legal and equitable concerns identified above, in support of its conclusion that denial of res judicata effect to the judgment against Adkinson furthers the legitimate state goal of dispensing justice.

17. The court also noted that, "in view of the in rem nature of the proceeding," the court itself had independently considered Williams, Jr.'s position. *Stone v. Gulf American*, 554 So.2d at 374.

raised those issues which Williams, Jr. might have been expected to raise, these issues were in fact inextricably intertwined with the state court judgment. All the "issues" Williams, Jr. seeks to raise before this court present, in different forms, legal challenges to the Alabama Supreme Court's decision to permit Adkinson to share in the Williams estate. To resolve any of these claims, as discussed above, this court would have to review the merits of that decision for errors of federal and state law. Thus any jurisdiction exercised by this court would be appellate, not original.[18]

### 2. *Younger* Abstention

 Even if these claims were not barred by *Rooker–Feldman,* this court would still be forced to dismiss Williams, Jr.'s claims for injunctive relief under the abstention doctrine announced in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* confirmed the "strong federal policy against federal-court interference with pending state judicial proceedings." *Middlesex County Ethics Comm. v. Garden,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The idea of "comity" expressed in *Younger* requires a federal court to abstain when the plaintiff could raise his federal law claims in the state-court proceedings. *Moore v. Sims,* 442 U.S. 415, 426, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979). Although originally restricted in application to criminal proceedings, the Supreme Court has held that the principles of federalism

recognized in *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. *Garden,* 457 U.S. at 431, 102 S.Ct. at 1521. When such interests are present, "a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Id.* (quoting *Moore,* 442 U.S. at 426, 99 S.Ct. at 2379). Therefore, to determine whether abstention is appropriate under *Younger,* the court considers three questions: first, whether there is an ongoing state judicial proceeding; second, whether the proceedings implicate important state interests; and third, whether the federal plaintiff has an adequate opportunity to raise his constitutional challenges in those proceedings. *Id.*

Here, all three factors support this court's decision to abstain. First, since Williams, Jr. has specifically requested that this court enjoin any further state-court proceedings that would distribute proceeds from the estate to anyone but himself, the exercise of federal jurisdiction over Williams, Jr.'s claims would clearly interfere with the pending proceeding in state circuit court. Second, federal courts have long recognized an important state interest in the "orderly and just distribution of a decedent's property at death." *Reed v. Campbell,* 476 U.S. 852, 855, 106 S.Ct. 2234, 2237, 90 L.Ed.2d 858 (1986); *see also Ganoe v. Lummis,* 662 F.Supp. 718, 723 (S.D.N.Y.1987) (state has important interest in "efficiently administering the estates of its decedents in a single proceeding"),

---

**18.** Williams, Jr.'s reliance on Judge Johnson's concurring opinion in *United States v. Napper,* 887 F.2d 1528 (11th Cir.1989) (per curiam), is misplaced. In *Napper,* the United States government sought to intervene in a state-court action in which members of the media sought access to certain files in the possession of the city of Atlanta, including files loaned to Atlanta by the FBI. After its motion to intervene was denied, the United States filed a separate suit in federal court seeking recovery of those files it had loaned to the city. Judge Johnson, concurring in the decision to exercise jurisdiction, determined that *Rooker–Feldman* did not bar the exercise of federal jurisdiction over the government's substantive claims. *Id.* at 1533–34. He concluded that the question raised by the government in their federal suit—regarding the

federal government's right to recover the files— was distinct from those issues resolved in the state-court suit. Since the question of the government's ownership rights had not been presented to the state court and was not "inextricably intertwined" with the state court's resolution of the dispute between the city and the media, *Rooker–Feldman* did not apply.

Judge Johnson further observed, however, that *Rooker–Feldman* would have barred the federal court from hearing the government's claim if the government had sought review of the state-court decision denying leave to intervene. *Id.* at 1535. Here, Williams, Jr. seeks review both of the state court denial of his motion to appear and of legal issues already considered and resolved by the state court. *Napper* therefore does not support his claims.

*aff'd mem.*, 841 F.2d 1116 (2d Cir.), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 886 (1988).

Finally, it appears that Williams, Jr. may still raise any remaining federal claims in the proceedings currently pending before the state circuit court.[19] The Alabama Supreme Court has remanded that case to the trial court for "a full hearing and settlement, in a manner consistent with this opinion." *Stone v. Gulf American*, 554 So.2d at 370. Certainly, the trial court is not free to revisit those issues which have been finally settled in the appeal to the Supreme Court. *See, e.g., Erbe v. Eady*, 447 So.2d 778 (Ala.Civ.App.1984) ("When a case is remanded to a trial court after a decision on appeal, 'issues decided by the appellate court become law of the case and the trial court's duty is to comply with the appellate mandate....' The trial court is not free to reconsider issues finally decided in the mandate.") (internal citation omitted). It is also true, however, that, in certain situations, the trial court may permit the addition of new parties, amendment of the pleadings, and the submission of further proof. *Ex parte Insurance Co. of N. Amer.*, 523 So.2d 1064, 1069–70 (Ala.1988) (amendment of pleadings after remand permissible only as to issues not yet finally adjudicated). To date, the circuit court has permitted the addition of Williams, Jr. as a party and the amendment of Adkinson's complaint. It remains to be seen how that court will respond to the issues Williams, Jr. raises in his counterclaim. In deciding whether abstention is appropriate, a federal court must not "assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987).

Even if the trial court rejects his claims, Williams, Jr. will still be able to appeal that decision to the Alabama Supreme Court. If unsuccessful before that court, he may then seek review before the United States Supreme Court. Thus, if the trial court resolution of his claims is unsatisfactory, the standard channels for obtaining review of an unfavorable state-court judgment remain available to Williams, Jr. This court will not interrupt the orderly course of those proceedings.

## IV. Conclusion

Finally, this court would add that it is deeply troubled by the Alabama Supreme Court's actions toward Williams, Jr. Dissenting from the denial of leave to appear, Justice Shores makes a strong argument that, in an effort to rectify one perceived injustice, that court may have dealt an equally egregious one. *Stone v. Gulf American*, 554 So.2d at 375–76 (Shores, J., dissenting). Nevertheless, this court is not a court of error for either the Alabama Supreme Court or the Circuit Court of Montgomery County, Alabama. The entire thrust of Williams, Jr.'s claims and request for relief is to have this court place itself in the stead of the Alabama Supreme Court as the overseer of the actions of Judge Reese: this court, and not the Alabama Supreme Court, would tell Judge Reese how he should proceed in the state case now pending before him and, should he "err" at any point, the parties would turn to this court to correct him. Judge Reese's presence as a necessary defendant for the relief sought makes this point unmistakeably clear. The raw exercise of appellate power Williams, Jr. requests is simply beyond the reach of this trial court.

An appropriate judgment will be entered in accordance with this opinion.

## JUDGMENT

In accordance with the memorandum opinion of the court entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the motions to dismiss, filed by defendants Cathy Louise Deupree Adkin-

---

19. As Williams, Jr. has already brought to this court's attention in his brief in opposition to the remand of the state court suit Adkinson has filed against him, *Stone v. Williams*, 792 F.Supp. 749 (M.D.Ala.1992), he has in fact filed a counterclaim in the state-court proceedings in which he raises the same federal questions contained in this complaint. *See* note 2, *supra.*

son and Eugene W. Reese on August 12, 1991, be and they are hereby granted; and

(2) That the complaint filed on July 3, 1991, by plaintiff Randall "Hank" Williams, Jr., be and it is hereby dismissed without prejudice.

It is further ORDERED that costs be and they are hereby taxed against plaintiff Williams, for which execution may issue.