Beatrice S. WOOD and Sandra Surburg Ritter, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

ORANGE COUNTY and Kenneth Kienth, Defendants-Appellants.

No. 81–6176.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1983.

Rehearing and Rehearing En Banc Denied Nov. 17, 1983.

Philip H. Trees, Orlando, Fla., for defendants-appellants.

Larry Morgan, Greater Orlando Area Legal Services, Orlando, Fla., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, RONEY, Circuit Judge, and PITTMAN *, District Judge.

GODBOLD, Chief Judge:

This suit arises out of liens entered against plaintiffs Sandra Ritter and Beatrice Wood in Florida courts, and pursuant to a Florida statute, for the value of legal services provided them in criminal cases by a state public defender. Plaintiffs allege that the liens were entered in violation of their due process rights; defendants Orange County and Kenneth Kienth, comptroller of Orange County, seek to enforce the liens.

We must decide in this interlocutory appeal whether the district court has subject matter jurisdiction over plaintiffs' suit. The district court denied defendants' motion to dismiss for want of jurisdiction but, noting a conflict in the governing precedent, certified the jurisdictional question for interlocutory appeal. We hold that the district court has subject matter jurisdiction and remand.

---

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

Plaintiffs were defendants in separate criminal cases brought in the state courts of Orange County, Florida. The court adjudged plaintiffs insolvent in each case and appointed an attorney from the Orange County public defender's office to represent plaintiffs. Plaintiffs signed affidavits of insolvency containing a waiver clause, which informed plaintiffs of the possibility that a lien would be impressed against their property for the value of services rendered by the public defender. A Florida statute provides that the person against whom the lien is sought shall have notice, appointed counsel, an opportunity to be heard, and other procedural rights, *see* Fla.Stat.Ann. § 27.56(7) (West Supp.1983), but the waiver stated that plaintiffs waived notice of any lien proceedings.

After the criminal cases were over, the court entered liens against Wood and Ritter for $100 and $211 respectively. Neither plaintiff had notice of or participated in the lien proceedings. Plaintiffs allege that they first received notice of the liens many months later when contacted by a collection agency employed by Orange County. Thereafter plaintiffs filed suit in federal district court alleging due process violations and requesting injunctive and declaratory relief.

Defendants vigorously contend that the district court has no subject matter jurisdiction over plaintiffs' suit, citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and a long line of Fifth Circuit precedent holding that a federal district court has no jurisdiction to review a state court judgment. According to defendants, plaintiffs had an opportunity to raise constitutional objections to the lien procedure at several stages of state proceedings. The state court proceedings, they argue, are thus dispositive of plaintiffs' constitutional claims, and the plaintiffs' sole federal recourse was to ask the United States Supreme Court to review the state decisions creating the liens.

In *Rooker* the parties first litigated their dispute in Indiana courts. After the Indiana Supreme Court issued its decision and

the United States Supreme Court denied review, one of the parties filed suit in federal district court, arguing that the state decision rested on an unconstitutional state statute. Addressing the issue of the federal district court's subject matter jurisdiction, the unanimous Court held that the district court lacked jurisdiction to correct errors of federal law allegedly made by state courts in the exercise of their jurisdiction. *Id.* at 415, 44 S.Ct. at 150. The Court identified two statutory bases for its decision. First, it noted that it has exclusive authority to review decisions of a state supreme court for alleged errors of federal law. *Id.* at 416, 44 S.Ct. at 150; *see* 28 U.S.C. § 1257 (1976). Second, the Court reasoned that the requirement that the district court exercise "original" jurisdiction prevents the district court from, in effect, reviewing state court decisions. *Id.* at 416, 44 S.Ct. at 150; *see* 28 U.S.C. § 1331 (Supp. V 1981). *See generally* Chang, *Rediscovering the Rooker Doctrine: Section 1983, Res Judicata and the Federal Courts,* 31 Hastings L.J. 1337, 1346 (1980).

Consistent with *Rooker,* a long line of former Fifth Circuit cases has held that federal district courts have no jurisdiction to review, overturn, or modify state court judgments. *See, e.g., Kimball v. Florida Bar,* 632 F.2d 1283 (5th Cir.1980); *Lampkin-Asam v. Supreme Court,* 601 F.2d 760 (5th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Sawyer v. Overton,* 595 F.2d 252 (5th Cir.1979); *Brown v. Chastain,* 416 F.2d 1012 (5th Cir. 1969), *cert. denied,* 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134 (1970).

In *Gresham Park Community Organization v. Howell,* 652 F.2d 1227 (5th Cir.1981) (Unit B), the former Fifth Circuit qualified the scope of *Rooker* and rejected much of its progeny. The court discussed several Supreme Court cases in which the Court implicitly held that the district court had jurisdiction despite the fact that *Rooker* would have precluded jurisdiction. *Id.* at 1234. The court also identified a line of Fifth Circuit cases in conflict with the cases cited above that follow *Rooker. Id.* at

1234–35. It resolved the conflict by rejecting the broad proposition, expressed in these latter cases, that the federal district courts have no jurisdiction to entertain a claim made by a losing party in state court that would nullify or modify the state court decision. *Id.* at 1235–36. Further, *Gresham* reinterpreted *Rooker* to stand only for the truism that federal district courts cannot exercise jurisdiction where federal question or diversity of citizenship jurisdiction is lacking. *Id.* at 1236.

*Gresham's* limiting interpretation of *Rooker* was shortlived. While normally we would be bound by *Gresham,* the Supreme Court's intervening decision in *District of Columbia Court of Appeals v. Feldman,* —— U.S. ——, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), breathed new life into the *Rooker* doctrine as traditionally conceived. In *Feldman* plaintiffs filed petitions with the District of Columbia Court of Appeals, seeking waiver of the D.C. bar's requirement that members graduate from accredited law schools. In each case the D.C. Court of Appeals, the equivalent of the highest court of a state, denied the petition. The plaintiffs then brought suit in federal district court, challenging as a violation of federal law the D.C. Court of Appeals' refusal to waive the accreditation requirement.

In determining whether the federal district court had subject matter jurisdiction, the Supreme Court cited *Rooker* for the proposition that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court." *Id.* at ——, 103 S.Ct. at 1311, 1314, 75 L.Ed.2d at 218, 222 (citing *Rooker,* 263 U.S. at 415, 416, 44 S.Ct. at 150). Applying this general principle to the case before it, the Court distinguished between plaintiffs' challenge to the accreditation rule as applied to them and their general attack on its constitutionality. *Id.*

at —— – ——, 103 S.Ct. at 1315–16, 75 L.Ed.2d at 223–24. It held that the federal district court had no jurisdiction over the plaintiffs' allegation that the D.C. Court of Appeals had arbitrarily denied their waiver petitions. *Id.* at ——, 103 S.Ct. at 1316–17, 75 L.Ed.2d at 225. It characterized the court of appeals' decision as judicial and stated that the plaintiffs' allegation was "inextricably intertwined" with that court's decision. *Id.* By assuming jurisdiction over this allegation, the Court explained, the district court would be "review[ing] a final judicial decision of the highest court of a jurisdiction in a particular case." *Id.* In contrast, the Court held that the district court could properly assume jurisdiction over the plaintiffs' broadside challenge to the constitutionality of the accreditation requirement because this general challenge did not "require review of a judicial decision in a particular case." *Id.* at —— – ——, 103 S.Ct. at 1316–1317, 75 L.Ed.2d at 225–26.[1]

■ *Feldman* forthrightly reaffirms the validity of *Rooker.* It reminds the lower federal courts that, because federal review of state court decisions is entrusted solely to the Supreme Court, they may not decide federal issues that are raised in state proceedings and "inextricably intertwined" with the state court's judgment. *Id.* at ——, 103 S.Ct. at 1316–17, 75 L.Ed.2d at 225. *Feldman,* moreover, indicates that the *Rooker* bar also operates where the plaintiff fails to raise his federal claims in state court. In a footnote the Court rejected a Fifth Circuit case holding that *Rooker* applies only to issues actually raised, *id.* at —— n. 16, 103 S.Ct. at 1315 n. 16, 75 L.Ed.2d at 223 n. 16 (rejecting *Dasher v. Supreme Court,* 658 F.2d 1045 (5th Cir.1981) (Unit A)). The Court stated: "By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court."

---

1. Under *Feldman* the district court arguably would have jurisdiction if plaintiffs' action can be characterized as a general challenge to the constitutionality of the practice of requiring indigent defendants to sign an appointment of counsel form waiving all procedural rights with respect to the lien hearing. We need not address this issue because we conclude on other grounds that the district court has jurisdiction.

—— U.S. at —— n. 16, 103 S.Ct. at 1315 n. 16, 75 L.Ed.2d at 223 n. 16. Although at first blush the Court's apparent endorsement of the rule that a federal district court may not assume jurisdiction over issues that the plaintiff failed to present to state courts supports defendants' position in this case, there is an important limitation on this rule. The rule can apply only where the plaintiff had a reasonable opportunity to raise his federal claim in state proceedings. Where the plaintiff has had no such opportunity, he cannot fairly be said to have "failed" to raise the issue. Moreover, an issue that a plaintiff had no reasonable opportunity to raise cannot properly be regarded as part of the state case. In *Feldman*'s language, the issue that such a plaintiff asks the federal court to decide is not "inextricably intertwined" with the state court's judgment. As a result, the federal district court's jurisdiction does not trench on the exclusive authority of the Supreme Court to review state court decisions for errors of federal law. Stating it another way, because the issue did not figure, and could not reasonably have figured, in the state court's decision, the district court has "original" jurisdiction over the issue as required by 28 U.S.C. § 1331. Finally, interpreting *Rooker* to preclude a federal district court from considering an issue that the plaintiff had no reasonable opportunity to raise in state court might pose due process problems. Such a harsh rule might deprive the plaintiff of any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims, a result arguably contrary to the requirements of due process. *See Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); *General Oil Co. v. Crain*, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754 (1908). *See generally* Hart, *The Power of Congress To Limit the Jurisdiction of Federal Courts:*

*An Exercise in Dialectic,* 66 Harv.L.Rev. 1362 (1953).

For the foregoing reasons, we hold that the *Rooker* bar can apply only to issues that the plaintiff had a reasonable opportunity to raise.[2]

We apply these principles to the plaintiffs before us.

Defendants contend that plaintiffs had a reasonable opportunity to raise their constitutional objections at three separate stages of state proceedings: (1) when the plaintiffs signed the forms, (2) on appeal of the judgment creating the lien, and (3) on a motion under Fla.R.Civ.P. 1.540. Defendants' arguments are unpersuasive.

■ First, defendants argue that plaintiffs had an opportunity to raise their constitutional objections when they signed the affidavits containing the waiver clause. It is true that the waiver, if valid, put the plaintiffs on notice of the summary nature of the lien proceedings. It is also true that assuming the plaintiffs had valid notice they could have commenced an action in state court challenging the constitutionality of the lien proceedings. *Rooker,* however, does not preclude the jurisdiction of a federal district court over issues that the plaintiff could have raised in a suit that could have been, but was not, filed in state courts. *Rooker* addresses the effect of state court judgments. The crucial issue, therefore, is whether plaintiffs had a reasonable opportunity to raise their objections in the proceedings where the judgment creating the liens was entered and affirmed. When plaintiffs signed the affidavits, lien proceedings had not yet commenced. Indeed, there were no ongoing state proceedings in which plaintiffs could have raised and received a judicial determination of their constitutional claims.

---

**2.** The literal language in some of our prior cases is different from our holding. According to these cases, *Rooker* applies if the *effect* of a federal decision favorable to the plaintiff would be to modify or overturn the state judgment. *See Brown v. Chastain,* 416 F.2d 1012 (5th Cir.1969); *see also Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1233–34 (5th Cir.1981) (Unit B) (stating rule of Fifth Circuit's *Rooker* progeny). So stated, the *Rooker* bar would apply to federal claims arising out of a state court decision whether or not the plaintiff had a reasonable opportunity to raise those claims. For the reasons stated in the text we can no longer follow this mechanical formulation of the *Rooker* doctrine.

■ Second, defendants argue that plaintiffs could have raised their constitutional claims on appeal from the judgment creating the lien. Although defendants do not disagree with plaintiffs' allegation that they did not receive actual notice of the judgment until some 11 months after the judgment's entry, defendants contend that plaintiffs must be deemed to have had constructive knowledge of the judgment when it was entered. The cases cited by defendants in support of their argument, *e.g., Texas Gulf Citrus & Cattle Co. v. Kelley,* 591 F.2d 439, 440 (8th Cir.1979), are distinguishable. Those cases stand for the principle that where a party has had notice of proceedings he may be held to have had constructive knowledge of the judgment entered therein. *See id.* The party's constructive knowledge of the entry of judgment is conditioned on his actual notice that proceedings have been instituted against him. Defendants have cited no cases, and we find none, for the proposition that a party may be imputed with constructive knowledge of a judgment entered pursuant to ex parte proceedings of which he has no actual notice. Because plaintiffs did not receive actual notice of the judgment until well after the time for filing an appeal had elapsed, they lacked a reasonable opportunity to appeal the judgment.

Finally, defendants argue that plaintiffs could have raised their objections by filing a Fla.R.Civ.P. 1.540 motion to set aside the final judgment creating the lien. Rule 1.540 provides that a court, upon a motion of a party made within one year of entry of judgment, may relieve a party from the judgment on grounds of, *inter alia,* inadvertence or surprise. Assuming that claims such as the plaintiffs' are cognizable on a Rule 1.540 motion for relief from judgment, the *Rooker* bar does not apply.

A Rule 1.540 motion is not a substitute for appeal, and the court deciding such a motion does not act as an appellate court. *See Pompano Atlantis Condominium Association v. Merlino,* 415 So.2d 153, 154 (Fla. Dist.Ct.App.1982). The rule permits a special kind of collateral attack on, rather than an appeal of, the judgment. *Fiber Crete Homes, Inc. v. Division of Administration,* 315 So.2d 492, 493 (Fla.Dist.Ct.App.1975). Proceedings surrounding Rule 1.540 are considered separate from those surrounding entry of the judgment. A denial of a Rule 1.540 motion is, for example, appealable not as the decision of a reviewing court but as a separate judgment in its own right.

Because Rule 1.540 proceedings are not part of the process of appellate review of the original judgment, it does not matter for purposes of *Rooker* that plaintiffs could have raised their claims in such proceedings. The federal court may perform a role that a state court deciding a Rule 1.540 motion might also be able to perform. But the federal court is not usurping the role of a state appellate court because a state court deciding a Rule 1.540 motion does not act as an appellate court. The district court does not violate *Rooker*'s rationale by deciding plaintiffs' claims. *Rooker* simply precludes lower federal courts from acting as a state appellate court or as the United States Supreme Court in its capacity as reviewer of state decisions. *Rooker* is not a requirement that a plaintiff exhaust all conceivable state remedies; it does not require that where possible he institute proceedings so that state courts can consider the plaintiff's federal claims in the first instance. The important point is that plaintiffs lacked a reasonable opportunity to raise their claims in the proceedings surrounding entry of the judgment.

Since plaintiffs did not have a reasonable opportunity to raise their claims in the state trial court where judgment was entered or on appeal of that judgment, the district court will not usurp the role of state appellate courts or the Supreme Court by accepting jurisdiction. The plaintiffs' allegations were not "inextricably intertwined" with the state court judgment.

#### Other Issues

Our conclusion that plaintiffs did not have a reasonable opportunity to raise their constitutional claims in the state lien action disposes of defendants' res judicata argument. Res judicata applies only where the

party had such an opportunity. *See generally Durfee v. Duke*, 375 U.S. 106, 111–12, 84 S.Ct. 242, 245–246, 11 L.Ed.2d 186 (1963), and cases cited therein.

 Defendants also maintain that they are not proper defendants because they did not cause plaintiffs the allegedly unconstitutional deprivation of which they complain. The alleged due process violation, defendants assert, was caused by state courts, not them. This argument is flawed. The state court judgment does not, by itself, cause a deprivation of property within the meaning of the Fourteenth Amendment. The deprivation is not complete until the judgment is enforced, and under the governing statute, the county has authority to enforce the judicially created liens. *See* Fla.Stat.Ann. § 27.56(2) (West Supp.1983). Defendants are not entitled to dismissal.

The order of the district court denying defendants' motion to dismiss is AFFIRMED.