**In re T. Brian GLASS, Debtor.**

**Bankruptcy No. 99–1726–3P3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 25, 1999.

Janet H. Thurston, Thurston & Cohen, Jacksonville, for Debtor.

Michael Weinstock, Weinstock & Scavo, P.C., Atlanta, GA, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This case came before the Court upon a motion for sanctions filed by T. Brian Glass ("Debtor") against his former wife, Angela G. Glass and the law firm of Weinstock & Scavo, P.C., for violations of the automatic stay provision of 11 U.S.C. § 362. After hearings on May 13, 1999, June 30, 1999, and July 22, 1999, the Court gave the parties sixty days to submit proposed findings of fact and conclusions of law, a brief, and a proposed order. (Doc. 33.) Upon the evidence and argument of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On December 21, 1998, a Final Judgment and Decree of Divorce (the "Decree") was entered by Judge Joel J. Fryer in the Fulton County Superior Court, Georgia, terminating the marriage of Debtor and Angela G. Glass ("Wife"). The Decree was entered pursuant to a jury verdict rendered in *T. Brian Glass v. Angela Garrel Glass*, Civil Action File No. E–54127 (the "Divorce Proceeding"). Wife was represented in the Divorce Proceeding by the law firm of Weintstock & Scavo, P.C. ("Weinstock & Scavo"). Wife is also represented by Weinstock & Scavo in the case at bar.

2. Pursuant to terms of the Decree, Debtor was required to pay to Wife, " . . . one lump sum alimony payment in the sum of one hundred seventy-two thousand dollars ($172,000.00) on or before June 15, 1999. Said lump sum alimony payment under this sub-paragraph shall not be includable in the gross income of Defendant [Wife] or allowable as a deduction to Plaintiff [Debtor] under § 71 or § 215 of the Internal Revenue Code of 1986, as amended."

3. Also, paragraph 3(B) of the Decree requires Debtor to pay Wife "additional periodic monthly alimony payments . . . in the amount of one thousand five hundred dollars ($1,500.00) each month until the entire lump sum alimony obligation has been paid . . . "

4. Subsequent to the entry of the Decree, Debtor filed a Motion for New Trial, and requested a supersedeas, which, under Georgia law, is equivalent to a stay pending appeal. On February 16, 1999, Judge Fryer denied the supersedeas. (Debtor's Ex. 7 at pp. 15–16.)

5. Following the denial of supersedeas, Debtor filed a Chapter 13 petition with this Court on March 11, 1999. (Doc. 1.)

6. Wife and Weinstock & Scavo were listed as potential general unsecured creditors on Debtor's Schedule F. (Debtor's Ex. 8.)

7. On March 16, 1999, Debtor filed an adversary complaint against Wife and Weinstock & Scavo, alleging that the monetary awards to Wife set out in the Decree are not "alimony, maintenance or support", and thus, are dischargeable in accordance with 11 U.S.C. § 1328(a)(2) and not entitled to priority pursuant to 11 U.S.C. § 1322(a)(2). (Adv.Doc. 1.) The adversary proceeding makes similar allegations with regard to Weinstock & Scavo's request for an award of $154,769.17 for legal services provided to Wife. (*Id.*)

8. In the months of January, February and March 1999, Debtor only paid Wife periodic alimony in the amount of $850.00 per month. Debtor did not pay any periodic alimony for the month of April 1999.

9. On April 9, 1999, Wife and Weinstock & Scavo filed a Petition for Citation for Contempt ("Petition for Contempt") in the Superior Court of Fulton County, Georgia. (Debtor's Ex. 2.)

10. The Certificate of Service attached to the Petition for Contempt indicates that service was made to the Atlanta office of Holland & Knight, Debtor's attorneys in the Divorce Proceeding. (Debtor's Ex. 2 at p. 5.) However, the Certificate of Service does not list Debtor. (*Id.*)

11. Wife and Weinstock & Scavo admit that they did not seek relief from the automatic stay prior to filing the Petition for Contempt.

12. On April 13, 1999, the Clerk, Superior Court of Fulton County, Georgia, entered a Rule Nisi, ordering Debtor to appear and show cause at a hearing scheduled for 9:30 a.m. on the 15th day of March, 1999.[1] (Debtor's Ex. 6.)

13. On April 14, 1999, Debtor filed a motion for sanctions for violations of the automatic stay, seeking to recover attorney's fees, court reporter costs, and an award of punitive damages pursuant to 11 U.S.C. § 362(h). (Doc. 14.)

14. On April 15, 1999, at 9:30 a.m., Judge Fryer held a hearing on Wife's Petition for Contempt. Debtor was not present. Nonetheless, an attorney from the Atlanta office of Holland & Knight appeared and represented Debtor at the contempt hearing. Debtor's counsel argued that less than twenty-four hours notice of a hearing on a Petition for Contempt was not fair or reasonable and did not give Debtor, a Florida resident, a chance to prepare and attend. (Debtor's Ex. 1 at pp. 13–15.) Debtor's counsel also argued that the Petition for Contempt was brought in violation of the automatic stay of 11 U.S.C. § 362. (*Id.* at 16–30.)

14. Wife and Weinstock & Scavo contended that, in accordance with Georgia law, notice of the hearing was reasonable under the circumstances and, because they were only seeking to "establish" the current alimony arrearage due under the Decree, the Petition for Contempt was excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(2)(A)(ii). (*Id.* at 13–30.)

15. At the conclusion of the April 15, 1999 hearing, Judge Fryer found Debtor to be in willful contempt for failing to pay $3,450.00 to Wife and determined that the Petition for Contempt was excepted from the automatic stay provision pursuant to 11 U.S.C. § 362(b)(2)(A)(ii). (*Id.* at 30–48.)

16. The parties stipulated that Debtor received a bill from Holland & Knight regarding legal services for Debtor in connection with the Petition for Contempt. (Debtor's Ex. 9.)

## CONCLUSIONS OF LAW

Debtor contends that the actions of Wife and Weinstock & Scavo in filing the Petition for Contempt, in obtaining the entry of the Rule Nisi, and in attempting to liquidate the claim for attorney's fees, were actions taken in violation of the auto-

1. The Rule Nisi was issued on April 13, 1999, showing an incorrect hearing date of March 15, 1999. (Debtor's Ex. 6.) The show cause hearing was actually held on April 15, 1999. (Debtor's Ex. 1.)

matic stay of 11 U.S.C. § 362. Debtor also argues that an award of punitive damages is appropriate in this case because the stay violations were not only willful and knowing, but deliberately undertaken as part of a calculated legal strategy to thwart this Court's jurisdiction. Wife and Weinstock & Scavo maintain that the Petition for Contempt is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(2)(A)(ii).[2] (Resp't Br. at 4–8.) Wife and Weinstock & Scavo also suggest that the *Rooker–Feldman*[3] doctrine deprives this Court of subject matter jurisdiction in this action because Judge Fryer has already adjudicated the applicability of the automatic stay. (*Id.* at 8–10.) Because the Court cannot entertain this action if subject matter jurisdiction is lacking, the Court will first address whether the *Rooker–Feldman* doctrine precludes the disposition of Debtor's motion in this Court.

## I. Rooker–Feldman Doctrine

The *Rooker–Feldman* doctrine is derived from two Supreme Court cases decided nearly sixty years apart. *See Feldman*, 460 U.S. at 462, 103 S.Ct. 1303; *Rooker*, 263 U.S. at 413, 44 S.Ct. 149. According to the *Rooker–Feldman* doctrine, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme Court]." *Powell v. Powell*, 80 F.3d 464, 466 (11th Cir.1996) (citing *Feldman*, 460 U.S. at 482, 103 S.Ct. 1303). The doctrine expresses the principle that federal courts are courts of original jurisdiction that do not sit in an appellate capacity with respect to state courts. *See* 28 U.S.C. § 1331 (providing that federal district courts are courts of original jurisdiction); 28 U.S.C. § 1257

(1999) (limiting federal review of state court proceedings to United States Supreme Court).

■ The *Rooker–Feldman* doctrine is grounded on federalism, comity and the premise that state courts are not inferior to federal courts. *See Powell*, 80 F.3d at 467. "In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located." *Id.* (citing *Lockhart v. Fretwell*, 506 U.S. 364, 376, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (Thomas J., concurring)). Accordingly, *Rooker–Feldman* precludes a federal action if the relief requested would effectively reverse the state court decision or void its ruling. *See Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995); *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997). Moreover, "the doctrine applies not only to claims actually raised in the state court, but also to claims that were not raised in the state court but are 'inextricably intertwined' with the state court's judgment." *Powell*, 80 F.3d at 466 (citing *Feldman*, 460 U.S. at 482, n. 16, 103 S.Ct. 1303). "The federal claim is deemed 'inextricably intertwined' with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Singleton v. Fifth Third Bank of Western Ohio (In re Singleton)*, 230 B.R. 533, 537 (6th Cir. BAP 1999) (citations omitted). Thus, pursuant to *Rooker–Feldman*, federal courts (other than the Supreme Court) cannot review state court judgments for errors in construing federal law. *Id.*

■ However, there appear to be several exceptions to the hard and fast *Rooker–Feldman* rule of federal-state comity.

**2.** This section provides that the automatic stay "does not operate as a stay of the commencement or continuation of an action or proceeding for the establishment or modification of an order for alimony, maintenance or support." 11 U.S.C. § 362(b)(2)(A)(ii) (1999).

**3.** *See District Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

These exceptions generally come into play when the state proceedings are considered a legal nullity, and thus, are void ab initio. *See Kalb v. Feuerstein*, 308 U.S. 433, 438–40, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (holding judgment in violation of automatic stay void); *but see Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989) (finding violation of automatic stay voidable rather than void ab initio). The Eleventh Circuit has recognized an important limitation to the *Rooker–Feldman* doctrine when the plaintiff has no "reasonable opportunity to raise his federal claim in state proceedings." *See Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); *see also Biddulph v. Mortham*, 89 F.3d 1491, 1495, n. 1 (11th Cir.1996). In such an instance, the federal claim is not considered to be "inextricably intertwined" with the state court's judgment. *Id.* Furthermore, the Sixth Circuit recognizes an exception to *Rooker–Feldman* when the state court judgment was "procured through fraud, deception, accident, or mistake...." *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186, 189 (6th Cir.1986). Moreover, it has been determined that the *Rooker–Feldman* rule does not bar a suit in federal court brought by an individual who was not a party to the state court action. *See Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 812 (8th Cir.1998) (citing *Johnson v. De Grandy*, 512 U.S. 997, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)); *see also United States v. Owens*, 54 F.3d 271, 274 (6th Cir.), *cert. dismissed*, 516 U.S. 983, 116 S.Ct. 492, 133 L.Ed.2d 418 (1995). The Seventh Circuit has also recognized an exception to *Rooker–Feldman* when a federal statute specifically authorizes federal review of a final state court decision. *See Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir.1996); 28 U.S.C. § 2241(1999) (authorizing federal district courts to review state court decisions in habeas corpus proceedings).

■ Debtor initially asserts that his situation falls within the Eleventh Circuit's recognized exception to *Rooker–Feldman* because the contempt order was not the result of a full hearing and thus, he did not have a "reasonable opportunity" to raise his federal claim in the state court. *See Wood*, 715 F.2d at 1547 (holding *Rooker* bar only applies to issues plaintiff had reasonable opportunity to raise). However, Debtor clearly had the opportunity to and, in fact, did raise his federal claim in the state court. While Debtor apparently received only two days notice of, and did not attend the hearing on, the Petition for Contempt, Debtor's counsel of record in the Divorce Proceeding appeared and ably represented Debtor's interests. (*See* Debtor's Ex. 1.) At the state court proceeding Debtor's counsel raised both the issue of insufficient notice and of an alleged violation of the automatic stay. The state court rejected the notice argument and specifically found the Petition for Contempt excepted from the automatic stay. The *Rooker–Feldman* exception as enunciated in *Wood* only applies if "the issue did not figure, and could not reasonably have figured, in the state court's decision...." 715 F.2d at 1547. Not only did these issues figure in the state court's decision, but they were exactly the issues upon which the state court based its decision. Therefore, the *Wood* exception is inapplicable. *See Wood*, 715 F.2d at 1547–48.

■ Several courts have held that bankruptcy courts have exclusive jurisdiction to determine questions involving the automatic stay. *Rainwater v. State of Ala. (In re Rainwater)*, 233 B.R. 126 (Bankr. N.D.Ala.1999) (citing *Gruntz v. County of Los Angeles (In re Gruntz)*, 166 F.3d 1020, 1024–25; *reh'g granted*, 177 F.3d 729 (9th Cir.1999); *In re Raboin*, 135 B.R. 682, 684 (Bankr.D.Kan.1991); *In re Sermersheim*, 97 B.R. 885, 888 (Bankr.N.D.Ohio 1989)). Moreover, the Ninth Circuit in *Gruntz* recently held that state courts lack jurisdiction to determine whether the automatic stay applies to a proceeding pending be-

fore them. 166 F.3d at 1024–26. The fundamental problem with the Ninth Circuit's opinion is the court's conclusion that the state court lacked jurisdiction to interpret § 362. *Id.* The court reached that determination by noting that bankruptcy courts have exclusive jurisdiction over bankruptcy *cases.* *See id.;* 28 U.S.C. § 1334(a) (1999) (emphasis added). The court also noted that the automatic stay is "one of the fundamental debtor protections provided in bankruptcy laws," therefore, state court jurisdiction to determine its scope "would be inconsistent with and subvert the exclusive jurisdiction of the federal courts."[4] *Gruntz,* 166 F.3d at 1024 (citation omitted).

However, because a proceeding to determine the applicability of the automatic stay does not constitute a bankruptcy *case,* the exclusivity of jurisdiction provision of § 1334(a) does not apply. (emphasis added). Further, the state court criminal proceeding in *Gruntz,* which sought to convict the debtor for failing to pay child support payments, did not purport to exercise jurisdiction over property of the bankruptcy estate. Thus, the exclusivity provision of § 1334(e) does not apply. Consequently, the *Gruntz* Court failed to apply the relevant jurisdictional statute. A proceeding to determine the applicability of the automatic stay arises under Title 11, or arises in or is related to a case under Title 11. *See* 28 U.S.C. § 1334(b) (1999). Therefore, a bankruptcy court has "original but not exclusive jurisdiction..." to determine its application. *Id.* Therefore, a bankruptcy court has "original but not exclusive jurisdiction. . ." to determine its application. *Id.* It appears the Ninth Circuit has

recognized this fundamental problem. On July 20, 1999, upon the vote of the majority of nonrecused regular active judges of the Ninth Circuit Court of Appeals, the three-judge panel opinion in *Gruntz* was withdrawn and the case was ordered to be reheard by the en banc court pursuant to Circuit Rule 35–3. *See* 177 F.3d 728.

■ The Court agrees with the holdings in the Second and Sixth Circuits that "[t]he court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay." *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp. Litig.),* 765 F.2d 343, 347 (2nd Cir.1985); *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 939 (6th Cir. 1986). Thus, the applicability of the automatic stay falls concurrently within the purview of the bankruptcy court and that of the state court.[5] *See In re Montana,* 185 B.R. 650, 652 (Bankr.S.D.Fla.1995); *Sea Span Publications, Inc. v. Greneker (In re Sea Span Publications, Inc.),* 126 B.R. 622 (Bankr.M.D.Fla.1991); *In re Mann,* 88 B.R. 427 (Bankr.S.D.Fla.1988); *In re Cummings,* 201 B.R. 586, 588 (Bankr.S.D.Fla.1996). Therefore, the Court rejects Debtor's implicit argument that a state court decision interpreting the scope of the automatic stay is void ab initio.

Under a *Rooker–Feldman* analysis, the Court looks at the actual arguments of the parties and the issues decided in state court. *See Datz v. Kilgore,* 51 F.3d 252, 254 (11th Cir.1995). The state court found the Petition for Contempt to be specifically

4. The court based this conclusion on *Gonzales v. Parks,* 830 F.2d 1033, 1035 (9th Cir.1987), which held that state courts could not determine the propriety of a bankruptcy petition. However, a bankruptcy petition commences a case and therefore, the determination of its propriety is directly related to the bankruptcy court's exclusive jurisdiction over the case. *See* 28 U.S.C. § 1334(a). On the other hand, interpretation of the scope of § 362 which arises as a result of the filing is not so closely linked to the bankruptcy court's exclusive jurisdiction over the case itself. *Id.*

5. A careful distinction must be made between determining the applicability of the automatic

stay and the granting of relief from its otherwise operative provisions. State courts may make a valid and binding determination of the applicability of § 362 when dealing with matters before them. *See Pope v. Wagner (Matter of Pope),* 209 B.R. 1015, 1020 (Bankr. N.D.Ga.1997) (citations omitted). However, if the automatic stay does apply to a given action, only the bankruptcy court may grant relief from its terms. *See* 11 U.S.C. § 362(d) (1999); *see also Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir.1983) (noting legislative history of § 362(d) unambiguously identifies bankruptcy court as having exclusive jurisdiction to grant stay relief).

excepted from the automatic stay. Therefore, Debtor cannot succeed on the merits of his motion for sanctions unless the state court was wrong in its conclusion that there was no stay violation. In the present case, this federal action is not only inextricably intertwined with the state court judgment, but the issue was actually raised and decided by the state court. *See Blue Cross and Blue Shield of Md., Inc. v. Weiner,* 868 F.2d 1550, 1554 (11th Cir. 1989). Because the state court squarely adjudicated the issue of the applicability of the automatic stay, Debtor's motion for sanctions is nothing but a "prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). *See also Narey v. Dean,* 32 F.3d 1521, 1524–25 (11th Cir.1994). This decision was fully within the jurisdiction of the state court. If Debtor believed the state court erred in finding Wife's Petition for Contempt to be excepted from the automatic stay, his remedy was to seek appellate review within the courts of Georgia. As this Court has previously noted, "[t]he Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]." *G & R Mfg. Co. v. Gunia (In re G & R Mfg. Co.),* 91 B.R. 991, 994 (Bankr.M.D.Fla.1988). Thus, disposition of Debtor's motion in this Court is barred by *Rooker–Feldman* and no exception to the doctrine applies.

### CONCLUSION

Pursuant to the *Rooker–Feldman* doctrine, the Court is without jurisdiction to consider Debtor's motion for sanctions in what would amount to a collateral attack on the state court decision. Accordingly, dismissal of the motion is appropriate. A separate order of dismissal was entered on October 25, 1999.