[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14450

_____

D.C. Docket No. 2:12-cv-00724-RDP-TFM


LINDA THURMAN and COURTNEE CARROLL,

                                        Plaintiffs-Appellants,

versus

JUDICIAL CORRECTION SERVICES, INC., and
CORRECTIONAL HEALTHCARE COMPANIES, INC.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(January 10, 2019)

Before WILLIAM PRYOR, MARTIN, and BALDOCK,* Circuit Judges.

BALDOCK, Circuit Judge:

_____

* Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Plaintiffs-Appellants Linda Thurman and Courtnee Carroll appeal from the district court's denial of their motion for partial summary judgment and grant of Defendants-Appellees Judicial Correctional Services, Inc. (JCS) and Correctional Healthcare Companies, Inc.'s motion for summary judgment.  After careful review, we affirm the district court.

At issue in this case is whether the *Rooker-Feldman* doctrine proscribes our jurisdiction to consider invalidating state court probation orders directing Plaintiffs Courtnee Carroll and Linda Thurman to pay fines and fees for misdemeanors.  We review de novo the application of the *Rooker-Feldman* doctrine.  *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1069−70 (11th Cir. 2013).  Under the *Rooker-Feldman* doctrine, federal district courts generally lack jurisdiction to review a final state court decision.  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).

## I.

### A. Plaintiff Courtnee Carroll

In April 2010, Plaintiff Courtnee Carroll received three tickets in Montgomery for failing to use a child restraint, switching tags, and driving without a license.  In May 2010, Carroll pleaded guilty to all charges.  The municipal court imposed $25 fines for the first two offenses and a $75 fine for the latter offense.

The court also imposed $113 in court costs for each offense. Rather than pay the fees and fines in full at one time, Carroll opted for a payment plan.

The court's order regarding the three tickets state that the court referred Carroll to JCS. On May 14, 2010, Carroll signed an "Order of Probation" issued on the municipal court's letterhead. The order placed Carroll on probation for twelve months and directed her to pay a $10 set-up fee and a $40 per month fee to JCS while on probation. The order also directed her to pay fees and costs totaling $805 at the rate of $140 per month.

Along with the financial obligations, the order of probation directed Carroll to report to her probation officers as instructed and report any changes in residence or employment. The order instructed Carroll to work during her probation unless she was a full-time student. The order warned Carroll that she could be arrested for violating the terms of her probation and that her probation could be revoked upon any such violation.

Carroll and a JCS employee each signed the order but the signature block for the municipal court judge remained blank. A separate JCS document entitled "Reporting for Probation" instructed Carroll not to contact the court with any questions about her case but to contact her probation officer. Carroll did not appeal the obligations set forth in the order of probation in state court and, instead, Carroll paid off her financial obligations in January 2011.

## B. Plaintiff Linda Thurman

In January 2012, Plaintiff Linda Thurman received a citation in Montgomery for failing to possess or display insurance. The municipal court ordered Thurman to pay $279 in court costs for this offense. Rather than pay the costs in full at one time, Thurman opted for a payment plan.

On February 10, 2012, Thurman signed an "Order of Probation" issued on the municipal court's letterhead. The order directed Thurman to pay $279 in court costs for her infraction and to pay $140 per month on any amount she owed. The order contained the same probation conditions as those in Carroll's order, including the obligation to pay JCS a $10 set-up fee and $40 per month while on probation. Thurman and a JCS employee signed the order of probation. Municipal court Judge Hayes's last name was handwritten on the order, along with a set of initials. Thurman did not appeal the obligations set forth in the order of probation in state court. In August 2012, Thurman paid off her financial obligations under the probation order. Like Carroll, Thurman also received a JCS document entitled "Reporting for Probation" instructing her not to contact the court with any questions about her case but to contact her probation officer.

## C. District Court Proceedings

In February 2013, Plaintiffs filed their second amended complaint as a putative class action alleging both diversity and federal question jurisdiction. As

4

relevant on appeal, Plaintiffs asked the district court to declare: (1) JCS violated state and federal law by commanding probationers to pay fines and fees pursuant to documents that were not lawful orders of probation; (2) JCS violated state and federal law by commanding or coercing money payments from individuals above the relevant statutory maximums; (3) JCS violated state and federal law by imposing probation for periods longer than the relevant statutory maximums; (4) JCS was unjustly enriched by its conduct; and (5) JCS obstructed justice and violated Plaintiffs' equal protection rights.  In addition to Plaintiffs' request for declaratory judgment, Plaintiffs claimed JCS was unjustly enriched by their collection of fees without authority and should be ordered "to disgorge the ill-gotten gains."

In a thorough written order, the district court dismissed without prejudice Plaintiffs' unjust enrichment claim and their request for the court to declare JCS's administration of purportedly unlawful orders of probation to be unlawful because the court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine. Regarding the Plaintiffs' request for declaratory relief, the court explained,

> [T]he *Rooker-Feldman* doctrine bars the court from considering the Plaintiffs' request to declare JCS's administration of purportedly unlawful orders of probation to be unlawful. . . . [T]his request for declaratory relief expressly rests on JCS's enforcement of state court orders and requires the court to find that those orders "are not lawful orders of probation."  This court lacks subject-matter jurisdiction to review and reject those state court orders.

Regarding the unjust enrichment claims, the district court determined they were also barred by the *Rooker-Feldman* doctrine:

> Plaintiffs' unjust enrichment claim, which is premised on the assertion that JCS received "ill-gotten gains" from collecting monies under the orders of probation, cannot be considered by the court under *Rooker-Feldman* either. For the court to conclude that JCS's fees were ill-gotten gains, it would necessarily have to find that the orders of probation did not authorize JCS to collect those fees because they were nullities. Accordingly, the claim ultimately asks the court to review and reject orders of probation that purportedly justified JCS's collection of monies from Carroll and Thurman. This the court cannot do.

In the alternative, the district court held the Alabama Voluntary Payment doctrine barred Plaintiffs' unjust enrichment claim. The district court determined Plaintiffs failed to present a triable issue whether JCS obtained the probation fees through fraud, duress, or improper pressure. Accordingly, the district court found Plaintiffs' claim failed as a matter of law.

## II.

### A. *Rooker-Feldman* Doctrine

We first turn to whether the district court erred in holding the *Rooker-Feldman* doctrine applies to bar Plaintiffs' claim for unjust enrichment and request for a declaratory judgment. Plaintiffs contend *Rooker-Feldman* does not apply for two reasons. First, Plaintiffs contend they are not seeking review of a state court decision. Second, Plaintiffs argue Defendants obstructed access to meaningful state court review.

6

### 1. Are Plaintiffs' orders of probation state court orders?

First, Plaintiffs contend the district court erred in concluding the *Rooker-Feldman* doctrine barred their claims because they are not seeking review of a state court decision. Plaintiffs contend the orders of probation are not valid orders because a judge did not sign the documents ordering them to pay probation fees. Plaintiffs conclude, if the orders are not signed by a judge, they are incomplete and therefore cannot be final judgments subject to *Rooker-Feldman*. In response, Defendants contend *Rooker-Feldman* applies because Plaintiffs' claims require this Court to determine whether the orders of probation were valid based on Alabama state law, which is precisely the action the *Rooker-Feldman* doctrine proscribes.

Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to adjudicate the validity of a state court order. *Feldman*, 460 U.S. at 482. The doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine bars federal jurisdiction "where the issue before the federal court [i]s 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court

7

wrongly decided the issues.'" *Alvarez v. Attorney Gen. of Fla.*, 679 F.3d 1257, 1262−63 (11th Cir. 2012) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).

By all appearances, the probation orders Plaintiffs seek to invalidate are state court orders.  The documents are titled "Order of Probation."  The documents are printed on "Municipal Court of Montgomery, AL" letterhead.  The documents state, "by virtue of the authority vested in me as a Municipal Court Judge . . . I hereby order."  Plaintiffs signed the documents acknowledging they "received a copy of this ORDER."  And perhaps most critically, Plaintiffs conceded at oral argument that if the probation orders were signed by a judge, the orders would be valid probation orders.

Plaintiffs' request for declaratory relief and claim for unjust enrichment expressly rest on Defendants' enforcement of state court orders and require this Court to conclude that those orders are not lawful orders of probation without a signature.  Such a request is precisely what *Rooker-Feldman* proscribes because it "complain[s] of injuries caused by state-court judgments and invite[s] . . . review and rejection of those judgments."  *May v. Morgan Cty.*, 878 F.3d 1001, 1005 (11th Cir. 2017) (quoting *Exxon Mobil*, 544 U.S. at 284) (quotations omitted).  We need not peer into Alabama law to determine whether an order must be signed to be valid because the *Rooker-Feldman* doctrine bars federal courts from

8

adjudicating the validity of state court orders. *See, e.g.*, *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1291 (11th Cir. 2018) (explaining that a district court must apply the *Rooker-Feldman* doctrine where the plaintiffs "ask[] to have a state-court order 'declared null and void'" (quoting *Rooker*, 263 U.S. at 414)). Plaintiffs' claims are "inextricably intertwined" with the state court probation orders so that the success of Plaintiffs' federal claims would effectively nullify the state court orders. *Feldman*, 460 U.S. at 486. Accordingly, the district court properly held it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine.

## 2. Did Plaintiffs have a reasonable opportunity to raise their federal claim in state court?

Next, we must determine whether Plaintiffs had a reasonable opportunity to raise their federal claim in state court. Plaintiffs argue *Rooker-Feldman* is not applicable because JCS obstructed Plaintiffs' access to state court review when JCS included the following language in its "Reporting for Probation" document: "The following person will be your probation officer. All questions concerning your case should be directed to him/her. Do not contact the Municipal Court they will be unable to help you." Plaintiffs argue this language discouraged Plaintiffs from contacting the municipal court and was "tantamount to a warning not to file an appeal with it." In response, Defendants argue the statement was not designed

to discourage an appeal but rather to communicate that JCS was better-positioned to answer the probationer's questions about probation.  Defendants argue further, even if the evidence supported "discouragement," discouraging the exercise of legal process does not establish that the discouraged party lacked meaningful access to the process.

Under the *Rooker-Feldman* doctrine, lower federal courts "may not decide federal issues that are raised in state court proceedings and 'inextricably intertwined' with the state court's judgment."  *Wood v. Orange Cty*., 715 F.2d 1543, 1546 (11th Cir. 1983).  The doctrine "also operates where the plaintiff fails to raise his federal claim in state court" if "the plaintiff had a reasonable opportunity to raise his federal claim in state court proceedings.  *Id.* at 1546−47. "[W]hen a party did not have a chance to raise its federal claim in state court, such claim 'is not "inextricably intertwined" with the state court's judgment.'" *Seminole Tribe of Fla. v. Fla., Dep't of Revenue*, 917 F. Supp. 2d 1255, 1259 (S.D. Fla. 2013), *aff'd on other grounds,* 750 F.3d 1238 (11th Cir. 2014) (quoting *Wood*, 715 F.2d at 1547).  Put another way, the *Rooker-Feldman* doctrine bars claims that "were or could have been decided by the state court." *Target Media Partners*, 881 F.3d at 1288 (citing *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1334 (11th Cir. 2001)).

10

Here, Plaintiffs do not assert that they did not have a chance to present their claims in state court or that their claims could not have been decided by a state court. They merely contend the language in the document from JCS "was effectively suppressive." Plaintiffs failed to explain how the instruction, "Do not contact the Municipal Court they will be unable to help you," deprived them of a reasonable opportunity to contest the probation fees, given that the instruction—and the document more broadly—makes no reference to a probationer's ability to appeal, let alone a state court's ability to decide such an appeal. Instead, the document instructs probationers to report to JCS offices to meet with his or her probation officer, identifies the probation officer, and provides the date, time, and amount of fees and fines due at the appointment. Reading the instruction in this context makes clear the instruction is about contacting a probation officer with questions, not about a probationer's opportunity to appeal the conditions of one's probation.

Plaintiffs failed to raise their challenge to the probation fees on direct appeal and now belatedly attempt to litigate their claim in federal court by relying on language in a document that does not address whether the claim "could have been decided by the state court." *Target Media Partners*, 881 F.3d at 1288. Plaintiffs are "just the sort of 'state-court loser[]' the *Rooker-Feldman* doctrine was designed to turn aside." *Casale*, 558 F.3d at 1261 (citing *Exxon*, 544 U.S. at 284). "If

11

[Plaintiff] believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of the trial court: direct appeal." *Id.* Because Plaintiffs had a reasonable opportunity to raise their challenge to probation fees in Alabama's state courts, the *Rooker-Feldman* doctrine bars this suit.[1]

**AFFIRMED**.

---

[1] Plaintiffs also contend the district court erred in finding, in the alternative, the Alabama Voluntary Payment doctrine barred Plaintiffs' unjust enrichment claims. Given the district court did not have subject-matter jurisdiction to resolve Plaintiffs' claims because the *Rooker-Feldman* doctrine bars both the request for declaratory relief and the unjust enrichment claim, we do not reach the state law question of whether the voluntary payment doctrine prevents Plaintiffs' recovery for the payments Plaintiffs made to Defendants.

MARTIN, Circuit Judge, dissenting:

Judicial Correction Services ("JCS") instructed Plaintiffs Linda Thurman and Courtnee Carroll: "All questions concerning your case should be directed to [your probation officer]. **<u>Do not contact the Municipal Court</u>** they will be unable to help you." (emphasis in original)  Ms. Thurman and Ms. Carroll got this instruction after JCS imposed a $40 per month probation fee and a $10 account set-up fee—all to be pocketed by JCS—on top of fines and court costs imposed on them because of their traffic violations.  Even in light of this directive, the Majority opinion says Ms. Thurman and Ms. Carroll had a "reasonable opportunity" to challenge JCS's imposition of fees in their respective state court proceedings.  Maj. Op. at 9–11.  I don't think this is so.  I view JCS (an agent of the Municipal Court) as having obstructed Ms. Thurman's and Ms. Carroll's access to state court review. For that reason, I would not apply the <u>Rooker–Feldman</u> doctrine to bar their claims in federal court.  I would reverse the District Court's dismissal of Plaintiffs' claims, and I respectfully dissent from the Majority's ruling to the contrary.

The Majority opinion recognizes that the <u>Rooker–Feldman</u> doctrine does not bar a federal court's jurisdiction over a claim if a plaintiff had no "reasonable opportunity to raise [her] federal claim in state proceedings." <u>Wood v. Orange Cty.</u>, 715 F.2d 1543, 1547 (11th Cir. 1983); <u>see also</u> <u>Powell v. Powell</u>, 80 F.3d 464, 467 (11th Cir. 1996) (explaining that a federal claim is not "inextricably

intertwined" with a state court judgment when a plaintiff lacked a reasonable opportunity to raise a claim in state court).  I have found no opinion in which this Circuit details what circumstances amount to a reasonable opportunity, but our cases generally look to whether a party had a reasonable chance to present claims in initial state proceedings or on appeal.  See, e.g., Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1334 (11th Cir. 2001) ("The plaintiffs were both parties to the state court proceeding, and . . . they were present and participated in the state court proceedings."); Dale v. Moore, 121 F.3d 624, 627 (11th Cir. 1997) (per curiam) (concluding a plaintiff had a reasonable opportunity to assert disability discrimination claims against the Florida Bar in state court where the Bar's rules permitted him to petition the Florida Supreme Court).

The Majority opinion rejects Ms. Thurman and Ms. Carroll's argument that JCS's command thwarted their opportunities to pursue their claims in state court. Maj. Op. at 10–11.  First, the Majority suggests it is enough that Ms. Thurman's and Ms. Carroll's claims "could" have been decided by the Municipal Court.  Maj. Op. at 11.  But this overlooks the fact that our Circuit has not treated every opportunity to bring a claim in state court as one that is reasonable for purposes of Rooker–Feldman.  For example, Biddulph v. Mortham, 89 F.3d 1491 (11th Cir. 1996) (per curiam), concluded that Rooker–Feldman did not bar a plaintiff's federal claim even though the Florida Supreme Court denied mandamus relief on

14

the very same claim.  Id. at 1495 n.1.  The Biddulph opinion reasoned "the state mandamus proceeding did not afford [the plaintiff] the kind of 'reasonable opportunity' to raise his federal claim that would preclude our independent review of that claim" because the state court grants mandamus relief only under very limited circumstances.  Id.  That Mr. Biddulph technically had his day in state court was not enough to deprive him of jurisdiction in federal court.

Also, in Wood v. Orange County—a decision issued only months after Feldman—this Court determined Rooker did not preclude a federal court from entertaining jurisdiction over claims related to liens imposed in state court.  715 F.2d at 1544, 1548.  Orange County and its comptroller urged that the plaintiffs had a reasonable opportunity to challenge the judgment resulting in the liens, even though the plaintiffs had no actual knowledge of the judgment until well after the time for filing an appeal.  Id. at 1548.  This Court declined to say the plaintiffs had constructive knowledge of the judgment, and concluded they lacked a reasonable opportunity to appeal because they had no actual notice until the time to appeal had already expired.  Id.  The Majority cites Wood, see Maj. Op. at 10, but seems to ignore its import.  I read the Majority opinion here to replace the "reasonableness" inquiry established in our Circuit's earlier cases with a too-rigid test that focuses solely on the technical availability of state court remedies.

15

Second, the Majority contends "context" demonstrates the do-not-contact instruction "is about contacting a probation officer with questions, not about a probationer's opportunity to appeal the conditions of one's probation." Maj. Op. at 11. Like Ms. Thurman and Ms. Carroll, I see it differently. Ms. Thurman and Ms. Carroll were told that "all questions concerning [their] case[s]" were to be directed to their respective probation officers, not to the Municipal Court. Unlike the Majority, I read "all" to mean "all." In my view, this instruction necessarily encompasses inquiries related to the appeal process.

On this record, I don't believe Ms. Thurman and Ms. Carroll were afforded reasonable opportunities to challenge JCS's imposition of fees. The instruction they received from JCS—the self-avowed agent of the Municipal Court charged with supervising their terms of probation—told them in no uncertain terms "[d]o not contact the Municipal Court." This message was both bolded and underlined for emphasis. And all the while, the Municipal Court was the very institution Ms. Thurman and Ms. Carroll needed to contact to challenge anything appearing on their "Orders of Probation." They could not have presented their claims to the Municipal Court without violating the emphatic instruction given by JCS.

True enough, no one barred Ms. Thurman and Ms. Carroll from defying JCS's instruction. But Ms. Thurman and Ms. Carroll say they understood JCS's command to mean they could not reach out to the Municipal Court for any reason,

16

including to challenge JCS's fees. And because JCS acted on behalf of the Municipal Court when supervising Plaintiffs' terms of probations, Plaintiffs could have reasonably believed its directives flowed from the Municipal Court itself. Cf. Long v. Shorebank Dev. Corp., 182 F.3d 548, 558 (7th Cir. 1999) ("Typically, either some action taken by the state court or state court procedures in place have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court."). If "Orders of Probation" issued by JCS are equal to orders of the Municipal Court, as the Majority opinion suggests, then why aren't instructions given by JCS similarly equal to instructions of the Municipal Court? By demanding that Ms. Thurman and Ms. Carroll steer clear of the Municipal Court, JCS thwarted the opportunities these women had for state court review. For this reason, I would hold that the Rooker–Feldman doctrine does not bar a federal court from hearing their claims, and I respectfully dissent from the Majority's decision to the contrary.

The District Court made the alternative ruling that JCS is entitled to summary judgment on Ms. Thurman and Ms. Carroll's unjust enrichment claim under the voluntary payment doctrine. The Majority opinion here concluded Rooker–Feldman barred their action in any event, so it did not address the voluntary payment issue. Maj. Op. at 12. n.1  For my part, I would decline to apply the Alabama voluntary payment doctrine to bar the claim. Under Alabama

17

law, a payment is voluntary only if it was "made by a person of his own motion, without compulsion; . . . without a mistake of fact or fraud, duress, coercion, or extortion, on a demand which is not enforceable against the payor.'" Mt. Airy Ins. Co. v. Doe Law Firm, 668 So. 2d 534, 538 (Ala. 1995) (quoting 70 C.J.S. Payment § 100 (1987)); see also CIT Commc'n Fin. Corp. v. McFadden, Lyon & Rouse, L.L.C., 37 So. 3d 114, 128 (Ala. 2009) ("[I]t is well settled that money voluntarily paid under a mistake of fact may be recovered, even where the party paying had means of ascertaining the real facts" (citation and quotation marks omitted)).  I read the allegations made by Ms. Thurman and Ms. Carroll and the record before this Court to at least raise an issue of material fact about whether they made their payments based on a mistake of fact.  Cf. Sykes v. Sykes, 78 So. 2d 273, 276 (Ala. 1954) ("The averments of the complaint clearly indicate that complainant paid out moneys for the benefit and protection of real estate in the belief that she was the equitable owner of the property and, therefore, had an interest to protect.  The contention that the bill shows her to be a mere volunteer is without merit.").  As I view the record, Ms. Thurman and Ms. Carroll certainly could have been under the mistaken impression the Municipal Court—and not JCS—had selected and imposed the fees they were required to pay to JCS.  For this reason, I would reverse the District Court's ruling on this issue as well.

I respectfully dissent to the holding of the Majority.

18