# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3007

_____

Rich Lemonds; Rich Halbman,     *
    *
     Plaintiffs/Appellants,     *
    *
       v.     *
    *   Appeal from the United States
    *   District Court for the Eastern
St. Louis County, a county having a     *   District of Missouri
charter form of government; City of     *
Peerless Park, a municipal corporation;     *
Dudley McCarter, trustee for the City     *
of Peerless Park; Blanche Sutherland,     *
    *
     Defendants/Appellees,     *
    *
Donna Asberry; John Asberry; Lisa     *
Chambers; Mary Corbett; Kevin Grady;     *
Elisabeth Kreminski; Frank Kreminski;     *
Mike McCole; Susan McCole; Greg     *
Lasky; Joseph Otzenberger; Elaine     *
Otzenberger; Thaddeus Otzenberger;     *
Arthur Otzenberger; Rosemarie     *
Otzenberger; Ritamarie Otzenberger;     *
Melvin Sutherland,     *
    *
     Intervenor Defendants/     *
     Appellees.     *

_____

No. 99-3930

_____

Rich Lemonds; Rich Halbman,      *
      *
      Plaintiffs/Appellants,      *
      *
      v.      *
      *
St. Louis County, a county having a      *
charter form of government; City of      *
Peerless Park, a municipal corporation;      *
Dudley McCarter, trustee for the City      *
of Peerless Park;      *
      *
      Defendants/Appellees,      *
      *
Donna Asberry; John Asberry; Lisa      *
Chambers; Mary Corbett; Kevin Grady;      *
Elisabeth Kreminski; Frank Kreminski;      *
Mike McCole; Susan McCole; Greg      *
Lasky; Joseph Otzenberger; Elaine      *
Otzenberger; Thaddeus Otzenberger;      *
Arthur Otzenberger; Rosemarie      *
Otzenberger; Ritamarie Otzenberger;      *
Melvin Sutherland; Blanche Sutherland,      *
      *
      Intervenor Defendants/      *
      Appellees.      *

_____

Submitted: April 12, 2000

Filed: August 3, 2000

_____

Before WOLLMAN, Chief Judge, MAGILL, Circuit Judge, and FRANK,[1] District
Judge.

_____

WOLLMAN, Chief Judge.

Rich Lemonds and Rich Halbman (appellants) appeal from the district court's[2] denial of their requests for a preliminary injunction and for leave to file a third amended complaint. Appellants also appeal from the dismissal with prejudice of their 42 U.S.C. § 1983 claims. We affirm.

**I.**

On December 11, 1997, eighteen registered voters living in Peerless Park, Missouri, filed a petition with the St. Louis County Council (the council) requesting that their small city be disincorporated.[3] The council, having determined that a total of twenty-seven registered voters resided in Peerless Park, concluded that the petition met the requirements of Missouri Statutes section 79.495, which calls for the disincorporation of a "fourth class city" having a population of less than one hundred people upon petition by two thirds of that city's voters. Accordingly, the council

---

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[3] Peerless Park consisted of ten households, all within one block of each other. Although the petition appears to have been the culmination of a long-standing neighborhood power struggle, the details of this hard-fought battle are not relevant to this appeal. Thus, although we deny appellees' motion to strike the statement of facts from appellants' brief, we note that the disputed facts played no part in our decision.

ordered the requested disincorporation and appointed a trustee to represent the former city.

Shortly after this order was issued, the former city and two of its former officials challenged the disincorporation in the Missouri Circuit Court for St. Louis County (the state court). The complaint, which named St. Louis County and several members of the council as defendants, sought to reverse the disincorporation primarily on the grounds that the petition was actually a request for a "boundary change," and that, as such, it was reviewable by the state Boundary Commission and required an open public election under Missouri law. The complaint further alleged that the council's order was "voidable" because section 79.495 violated the federal Due Process Clause by failing to provide for notice of an impending petition drive. The state court rejected the boundary change argument, upheld the constitutionality of the statute, and found that the statute's requirements had been met. The court entered judgment against the former city and its former officials. This decision was affirmed by the Missouri Court of Appeals. Neither appellant was a party to the state court action.

One week prior to the state appellate court affirmance, appellants – residents of Peerless Park who were not registered to vote when the petition was circulated – filed this section 1983 action in federal district court against the County, the city of Peerless Park, and the city's trustee. The federal complaint alleged that the statutory scheme permitting disincorporation without an election violates both the First Amendment and the Equal Protection Clause. The complaint asserted that both appellants were "qualified" voters and that, had they been notified that the petition was being circulated, they would have registered so that they would be counted toward the total number of voters residing in the city. As it was, both appellants registered to vote on December 12, 1997, the day after the petition was filed with the council; it is undisputed that, had either of them done so previously, the number of signatures on the petition would have been insufficient to effectuate disincorporation. Appellants sought

a preliminary injunction, declaratory judgment, and permanent injunctive relief voiding the disincorporation of Peerless Park.

The district court denied the request for a preliminary injunction on June 19, 1999, and dismissed all claims with prejudice on October 15, 1999. The court found that the complaint failed to state a claim upon which relief could be granted, that appellants lacked standing to raise their claims in any event, and that the suit was barred by res judicata principles and the Rooker-Feldman doctrine. Timely appeals were taken from both decisions, as well as from the court's August 24, 1999, denial of leave to file a third amended complaint adding four new plaintiffs. These appeals have been consolidated.

## II.

The Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court. See 28 U.S.C. § 1257; Feldman, 460 U.S. at 486. Because the Rooker-Feldman rule is jurisdictional, it may be addressed for the first time on appeal and may be raised sua sponte. See Doctor's Associates, Inc. v. Distajo, 107 F.3d 126, 137 (2d Cir. 1997). We review questions of subject matter jurisdiction de novo. See Charchenko v. City of Stillwater, 47 F.3d 981, 982-83 (8th Cir. 1995).

The Rooker-Feldman doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Thus, a corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. See

Feldman, 460 U.S. at 482 n.16; Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir. 1999); Neal v. Wilson, 112 F.3d 351, 356 (8th Cir. 1997). A general federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring). In such cases, "where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." Id. The state and federal claims need not be identical. See In re Goetzman, 91 F.3d 1173, 1177 (8th Cir. 1996).

Deciding whether Rooker-Feldman controls this case "requires determining exactly what the state court held" to ascertain whether granting the requested federal relief would either void the state court's judgment or effectively amount to a reversal of its holding.[4] Charchenko, 47 F.3d at 983; see Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998). In addition to raising state law arguments not at issue in this appeal, the state court action sought to invalidate the council's order on the basis of the federal Due Process Clause. The complaint alleged that section 79.495 violates both substantive and procedural due process principles by failing to ensure that all residents of a fourth class city receive adequate notice prior to the circulation of a disincorporation petition. Resolving this challenge, the state court held:

> Because [plaintiffs] have no "life, liberty or property" interest in the continued existence of Peerless Park, . . . there is no constitutional right to notice or a hearing. State law provides, and [plaintiffs] received, more process than [plaintiffs] were due. There is no constitutional right to vote on disincorporation of a fourth class city.

---

[4]Because the federal suit was filed prior to the decision of the Missouri Court of Appeals, we focus on the opinion of the Missouri Circuit Court for St. Louis County.

State ex rel. City of Peerless Park, Mo. v. Young, No. 98CC 1146 at 4-5 (St. Louis County, Mo., Cir. Ct., June 15, 1998) (unpublished) (citation omitted), reprinted at App. 414, 419-20. Accordingly, the state court declined to reverse the council's disincorporation order.

Turning to the federal complaint, we begin by noting that the relief sought – to enjoin the disincorporation of Peerless Park – would, as a practical matter, directly nullify the final judgment of the state district court upholding disincorporation. This fact alone may be sufficient to decide the case. See Suzanna Sherry, Judicial Federalism in the Trenches: Rooker-Feldman Doctrine in Action, 74 Notre Dame L. Rev. 1085, 1099 (1999) (suggesting that Rooker-Feldman applies wherever the federal court "is in effect reviewing the state court *judgment* even if it is not reviewing the *decision*") (emphasis in original); cf. Fed. R. Civ. P. 58 (distinguishing between judgments and opinions); Fed. R. App. P. 36 (same).

We also find, however, that even if appellants were not asking us effectively to overturn the state court's judgment, the federal claims they state so closely implicate the decision of the state court that the federal suit would be barred anyway. See Feldman, 460 U.S. at 482 n.16. In reaching this conclusion, we address two issues that complicate the inquiry.

First, since Rooker-Feldman deprives federal courts of jurisdiction over general claims not raised before the state court only where such claims are inextricably intertwined with the state court judgment, "a claim – particularly a claim under federal law – is not precluded if it is 'separable from and collateral to the merits of the state-court judgment.'" Fielder, 188 F.3d at 1034 (quoting Pennzoil, 481 U.S. at 21 (Brennan, J., concurring)). Thus, it is sometimes permissible for a plaintiff to challenge the constitutionality of a state rule in federal court even though a state court has previously upheld a particular application of the rule to that same plaintiff, so long as

the general federal challenge does not involve review of the state court decision.  See Feldman, 460 U.S. at 482-86.

On its face, appellants' federal complaint in this case may initially appear to articulate legal claims that are "separable from and collateral to" those raised before the state court.  Indeed, whereas the state court faced a due process challenge, the 36-page federal complaint studiously avoids any mention of "due process."  Instead, appellants creatively invoke the First Amendment, alleging that the secrecy of the petition process effectively "silenced" them, suppressing "core political speech" by preventing them from "conveying a political message against the disincorporation of the City."  In addition, because qualified but unregistered voters were not counted toward the total number of city residents for purposes of determining whether the requisite signatures of two thirds of the population had been recorded, appellants rely on the Equal Protection Clause to argue that the secret petition process denied them an "equal opportunity to win votes."

Ultimately, we believe that these arguments do no more than restate the claim for relief that was rejected on the merits by the state court.  Although technically the suits invoke distinct constitutional provisions, as a substantive matter they both challenge the basic fairness of the petition process based on the concept of lack of notice.  Thus, the first amendment and equal protection arguments presented to the district court appear to be nothing more than creative attempts to reclothe the failed due process claim in new constitutional garb.  As such, these arguments present us with a situation in which a decision favorable to appellants could "only be predicated upon a conviction that the state court was wrong."  Pennzoil, 481 U.S. at 25 (Marshall, J., concurring).  Without commenting on the merits of appellants' arguments, we simply reiterate that federal plaintiffs cannot by artful pleading obtain a hearing of disguised state court appeals that would otherwise be subject to a Rooker-Feldman bar.  See Fielder, 188 F.3d at 1034; Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992) (party

"cannot be allowed to escape <u>Rooker</u>-<u>Feldman</u> by raising a new constitutional theory in federal court").

The second complicating factor is that the parties to this suit are not the same as those who litigated in state court. Most importantly, neither appellant was a party to the state court action.[5] Appellants argue that the state court plaintiffs who raised the due process challenge would not have had standing to raise the first amendment and equal protection versions of the same argument because the state court plaintiffs, unlike appellants, were registered voters. Appellants also contend that <u>Rooker</u>-<u>Feldman</u> "exists to prevent a party in a state court from having two bites at the apple" and assert that "the <u>Rooker</u>-<u>Feldman</u> doctrine has never been applied against nonparties."

This is not quite accurate. We recognize that some courts have held that the <u>Rooker</u>-<u>Feldman</u> doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding state court action. <u>See, e.g.</u>, <u>Bennett v. Yoshina</u>, 140 F.3d 1218, 1223-24 (9th Cir. 1998), <u>cert. denied sub nom.</u> <u>Citizens for a Constitutional Convention v. Yoshina</u>, 525 U.S. 1103 (1999); <u>United States v. Owens</u>, 54 F.3d 271, 274 (6th Cir. 1995); <u>Valenti</u>, 962 F.2d at 297-98; <u>cf.</u> Wright & Miller, Federal Practice & Procedure § 4469.1 (1999 Supp.). Other courts, however, have not hesitated to apply <u>Rooker</u>-<u>Feldman</u> against parties who did not participate in the state suit, <u>see</u> <u>T.W. & M.W. v. Brophy</u>, 124 F.3d 893, 898 (7th Cir. 1997); <u>Republic of Paraguay v. Allen</u>, 949 F. Supp. 1269, 1273 (E.D. Va. 1996), <u>aff'd on other grounds</u>, 134 F.3d 622, 628 (4th Cir. 1997); <u>Williams v. Adkinson</u>, 792 F.Supp. 755, 761-63 (M.D. Ala. 1992), <u>aff'd</u>, 987 F.2d 774 (11th Cir. 1993) (unpublished table decision), and more than one federal appellate judge has expressed the view that the applicability of <u>Rooker</u>-<u>Feldman</u> should not depend on identity of the parties in the state and federal suits, <u>see</u> <u>Bates v. Jones</u>, 131 F.3d 843, 855-57 (9th Cir. 1997) (en

[5]In addition, whereas Peerless Park was a plaintiff in the state court suit, in this federal action the disincorporated city has been named as a defendant.

banc) (Rymer, J., concurring); Roe v. Alabama, 43 F.3d 574, 586 (11th Cir. 1995) (Edmondson, J., dissenting).

We are persuaded by the latter approach. Insisting that the parties must be identical, it seems to us, confuses the Rooker-Feldman doctrine with principles of res judicata. These doctrines are not the same. See Hachamovitch v. DeBuono, 159 F.3d 687, 696 n.2 (2d. Cir. 1998) (noting that the "Rooker-Feldman doctrine differs from preclusion in certain critical ways"); Charchenko, 47 F.3d at 984-85 (conducting separate analyses and finding claims barred by Rooker-Feldman but not res judicata). Although the two rules often overlap in their practical effects, they rest on contrasting foundations and serve distinct purposes. Thus, whereas res judicata is largely a matter of common law and involves the impropriety of permitting parties to have "two bites at the apple," Rooker-Feldman is based squarely on federal law and is concerned with federalism and the proper delineation of the power of the lower federal courts. Such courts are simply without authority to review most state court judgments – regardless of who might request them to do so. See Rooker, 263 U.S. at 416; Sherry, supra, at 1112-23. Accordingly, that appellants were not parties to the state suit is not by itself dispositive.[6]

That said, however, considering the situation of the parties will often be helpful in the "inextricably intertwined" analysis. The key inquiry, as always, must be whether

_____

[6]We recognize that, in Snider, 154 F.3d at 812, we felt it necessary to distinguish Johnson v. De Grandy, in which the Supreme Court stated that the United States's absence from a prior state court action supported the conclusion that the Rooker-Feldman doctrine did not prevent the United States from bringing a subsequent federal suit. See 512 U.S. 997, 1005-06 (1994). The absence of the United States from the state court proceedings was not critical to the outcome in De Grandy, however, since the Court additionally found, first, that the state court considered its own decision to have been a mere "preliminary look" at the relevant claims and, second, that the United States "ha[d] not directly attacked [the state court] judgment in this proceeding." Id.

the federal plaintiff's interest in having a state rule set aside is inseparable from his interest in upsetting a particular state court judgment based on that rule. See Feldman, 460 U.S. at 482-86. This may be the case where the federal plaintiff would have lacked standing to bring the general challenge but for the state court's judgment, see Facio v. Jones, 929 F.2d 541, 545 (10th Cir. 1991), or where the relief sought in federal court both implicates a state court decision and has merely retrospective as opposed to prospective effect, compare Centifanti v. Nix, 865 F.2d 1422, 1430 (3d Cir. 1989) (disbarred attorney's prospective challenge to reinstatement rules not precluded by Rooker-Feldman doctrine) with Stern v. Nix, 840 F.2d 208, 212 (3d Cir. 1988) (disbarred attorney's retrospective challenge to disbarment procedures precluded by Rooker-Feldman doctrine).

Conversely, although the fact that appellants were not parties to the state suit does not automatically preclude a Rooker-Feldman bar, we recognize that some courts have declined to apply the rule where the federal plaintiffs lacked a reasonable opportunity, through intervention or otherwise, to litigate their claims in state court. See, e.g., Long v. Shorebank Dev. Corp., 182 F.3d 548, 558 (7th Cir. 1999); Valenti, 962 F.2d at 296; Wood v. Orange County, 715 F.2d 1543, 1546-48 (11th Cir. 1983) (stating that when "plaintiffs did not have a reasonable opportunity to raise their claims in the state trial court where judgment was entered or on appeal of that judgment, the [federal] district court will not usurp the role of state appellate courts or the Supreme Court by accepting jurisdiction").[7]

In the present case, application of these principles reinforces our conclusion that Rooker-Feldman bars the federal claims. Appellants' general constitutional challenge

---

[7]We note that this is not the same as creating a blanket exception for procedural due process claims, a step we have expressly declined to take in the past. See Goetzman, 91 F.3d at 1178; Postma v. First Fed. Sav. & Loan of Sioux City, 74 F.3d 160, 162 n.3 (8th Cir. 1996).

to section 79.495 is inseparable from their desire to reverse the disincorporation of Peerless Park. Indeed, the only possible basis for federal standing in this case arises from the council's disincorporation decision, which was sustained by the state court in a judgment appellants now specifically ask us to overturn. Moreover, because the entire upshot of a favorable decision in this case would be to unwind the decision of the state court, granting the requested relief would have only retrospective effect. Appellants' federal claims are thus inextricably intertwined with the state court judgment. See Feldman, 470 U.S. at 482 n.16.

Furthermore, there can be little doubt that both appellants had ample opportunity to bring their first amendment and equal protection claims in state court. Both Lemonds and Halbman were city officials of Peerless Park up until its dissolution (Lemonds was an alderman and Halbman was building commissioner), and they were well aware of the state proceedings. Indeed, Lemonds himself sponsored the bill to hire an attorney for the city in the state court litigation and received regular reports on the progress of the case. Yet, rather than pursuing their claims before the state court, appellants awaited that court's adverse ruling before attempting to bring their substantively identical challenges in federal district court. This the Rooker-Feldman doctrine does not allow. See Long, 182 F.3d at 558.

Finally, we find no abuse of discretion in the district court's denial of leave to file a third amended complaint, as appellees' motion to dismiss based on the second amended complaint was already fully briefed and under submission, and granting further leave to amend would thus have imposed an undue burden on appellees. See In re Milk Products Antitrust Litigation, 195 F.3d 430, 438 (8th Cir. 1999), cert. denied sub nom. Rainy Lake One Stop, Inc. v. Marigold Foods, Inc., 120 S. Ct. 1534 (U.S. Mar. 27, 2000); Fuller v. Secretary of Defense, 30 F.3d 86, 89 (8th Cir. 1994) (standard of review).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.